CLEORIS O'DELL

*v.*

EUGENE MCKENZIE, *et al.*

(No. 12363)

Submitted September 28, 1965.   Decided December 7, 1965.

*Ralph Dunn,* for appellant.

*John L. Detch, Andrew Detch,* for appellees.

BROWNING, PRESIDENT:

Plaintiff, Cleoris O'Dell, the owner of a certain tract of land situate on the waters of Hominy Creek, Nicholas County, West Virginia, instituted this action for injunctive relief and for monetary damages to her property allegedly the result of the acts of the McKenzies, the owners of property downstream from plaintiff's, and of the Donna Mining Company, a corp., lessee of the McKenzies, in casting waste materials into the waters of Hominy Creek, damming it up and causing intermittent flooding of plaintiff's property. The McKenzies answered, filing a special plea of the statute of limitations, and admitting that they had executed a lease to the Donna Mining Company for surface mining purposes, reserving a royalty therefor, but denying that they were in any way liable to plaintiff for any action of the Donna Mining Company. Donna Mining Company made no answer and did not appear in the case, so that any reference hereinafter to the "defendants" will apply only to the McKenzies.

The plea of the statute of limitations was overruled and upon trial of the case the jury returned a verdict for the plaintiff and against the defendants in the amount of One Thousand Dollars. Judgment was entered thereon, plaintiff's prayer for injunctive relief being denied. Defendants moved to set aside the verdict and judgment on various grounds, including the reassertion that plaintiff's claim is barred by the statute of limitations and that there is no liability on the part of defendants for the acts of the Donna Mining Company which motion was sustained and judgment was entered for the defendants, to which action this Court granted an appeal on July 14, 1964.

The substance of the evidence adduced in behalf of plaintiff is that: plaintiff is the owner of a 50 acre tract of land, a portion of which is bottom land situated at the confluence of Amick's Branch and Hominy Creek in Nicholas County; prior to 1960 this portion was used mostly as a pasture for cattle; and, while heavy rains resulted in some flooding, the water receded in a day or two; in the spring of 1960 or

shortly before, the overburden or waste materials from a strip mine operation on the defendants' land was cast over the hillside at three different locations which materials partially or completely blocked Hominy Creek, theretofore a slow-moving, shallow stream; since these obstructions were placed in the stream, pools formed above each and a moderate rain results in the flooding of part of plaintiff's land and, when thus flooded, the waters are slow to recede leaving that land in a marshy state; the land so affected comprises approximately 10 acres; and, in order to restore the land to its former use in hay or as pasturage, it would be necessary to ditch and drain the land, clear away the debris, level places washed out by water and reseed, at an approximate cost of One Hundred Dollars an acre.

It was stipulated that the defendants executed a lease to the Donna Mining Company for the purpose of strip mining the coal from their property, reserving a royalty of twenty-five cents a ton, on July 2, 1959, and that the lease was abandoned by Donna on or before July 2, 1960. Witnesses for the defendants testified that plaintiff's land was marshy before the obstructions were placed in the stream and, while admitting on cross-examination that the obstructions did restrict the flow of water, contended that most, if not all, of plaintiff's damage resulted from beaver dams further re-, stricting the flow. An engineering witness for defendants testified that the cost of removal of the obstructions would be prohibitive. In their own behalf, defendants testified that they had no connection with the Donna Mining Company, except to lease to it, and were unaware that the overburden was being cast into Hominy Creek; the coal seam leased outcropped 1,000 feet above Hominy Creek on the mountainside; the overburden over the coal varied in thickness from 5 to 30 feet and in order to remove the coal it is necessary to remove this overburden; and, the overburden could have been removed and piled at the end of the coal by the use of a power shovel but that Donna did not do this; instead, Donna used a bulldozer and pushed the overburden over the hillside.

The jury was instructed as to their verdict in the event they believed plaintiff's damage resulted from the beaver dams and were also instructed as to the statute of limitations, if they believed plaintiff's damages were permanent and not temporary in nature. As heretofore stated, the jury returned a verdict in favor of plaintiff and against the defendants for One Thousand Dollars, which verdict was later set aside by the court.

Three issues are presented for determination by this Court upon this record—(1) Are the defendants liable for the acts of their lessee which allegedly damaged the property of the plaintiffs; (2) were the damages temporary or permanent; and (3) if temporary, does the evidence support the verdict? This case was tried upon the assumption that the damages to the plaintiff were temporary and there is no evidence in the record showing the value of the land before and after the alleged injury to it, which is the test if the damages were permanent.

The first question is the only one that has given this Court some difficulty. It is well settled in this jurisdiction that no person may obstruct or divert the natural flow of a stream of water across his premises to the injury of a riparian owner above or below. This is the first syllabus point in *Atkinson* v. *Chesapeake & Ohio Ry. Co.*, 74 W. Va. 633, 82 S. E. 502: "One can not negligently obstruct or divert the water of a natural course to the injury of another without liability." In *Pickens* v. *Coal River Boom and Timber Co.*, 58 W. Va. 11, 50 S. E. 872, Pt. 2, Syllabus, this Court held: "If the owner of a boom leases it to another to be operated as a boom, and at the time of the lease the boom is a private nuisance damaging a mill on the stream above the boom, the owner of the boom is liable to the mill owner, notwithstanding the lessee may, by addition to the boom, increase its power to damage the mill." The lease in the instant case, except for the stipulation as to the term, royalty and access provisions, is not a part of the record and we are not apprised of any provision therein, common to such leases, relating to the disposal of waste materials. It is apparent from the record, however, that, absent some restriction, the

least costly and quickest way of removing the overburden was to push it over the hillside where, in the natural course of events, it descended into the trough of Hominy Creek and, in effect, created the nuisance and damage of which plaintiff complains. The second point of the syllabus in the case of *Flanagan* v. *Gregory & Poole,* 136 W. Va. 554, 67 S. E. 2d 865, is as follows: "Where the lessor and lessee of land, acting in pursuance of a common purpose, the lessor permitting the lessee to erect structures which cause damage to the land of another, there is no misjoinder of parties or actions in making such lessor and lessee parties defendant in a single action brought by the injured party for such damages." The evidence in this case shows that the defendants, lessors, and the lessee had a common purpose in the stripping of coal from the defendants' land, that is, the defendants received a certain sum of money per ton for all coal removed and the lessee, it may be assumed, received or expected to receive a sum for each ton of such coal so as to show a profit upon the enterprise. We hold therefore that, under the circumstances of this case, the defendants are jointly liable with the lessee for the resulting damage to plaintiff.

In a long line of decisions beginning with *Smith* v. *Railroad Co.,* 23 W. Va. 451, and including *Jones, et al.* v. *Pennsylvania Railroad, a Corporation,* 138 W. Va. 191, 75 S. E. 2d 103, this Court has held that where the cause of injury is permanent in nature and a recovery for such injury would confer a license on the defendant to continue it, the entire damages may be recovered in a single action; but where the cause of injury is in the nature of a nuisance, and not permanent in character, but such that it may be supposed that the defendant would remove it rather than suffer at once entire damages, which it might inflict if permanent, then the entire damages, so as to include future damages, can not be recovered in a single action, but actions may be maintained from time to time as long as the cause of the injury continues. *Watts* v. *Norfolk & W. R. Co.,* 39 W. Va. 196, 19 S. E. 521. The measure of damages where the injury is temporary, as enunciated in the *Jones* case and approved

in many other cases, is the cost of repair, reimbursement of expenses directly occasioned by the injury, and compensation for loss of use or rent. See: 4 M. J., Damages, § 33; 7 Va. & W. Va. Digest, Damages, § 103, et seq.

It is clear from the evidence in this case that the damage to the plaintiff's land occurred only when the waters of Hominy Creek were increased by virtue of a rainstorm, although it was not necessary that there be an excessive amount of rainfall to cause the damage since the waters of this creek had been obstructed by the placing therein of logs and other debris as a result of the stripping operation by the lessee. However, upon the passage of time the flooded land of the plaintiffs would drain and be free of water until another rainfall raised the waters of Hominy Creek. There was evidence from which the jury could have concluded that the plaintiffs' land was not subject to such frequent flooding prior to the obstruction of the stream by the lessee. The witness, Carl Paller, a registered engineer, testified that "the blocking of the stream without any question impeded the flow of the water in Hominy Creek as it does not flow out as freely as it wants to through its natural and original channel causing the water above each obstruction to form what we would call a pool stage."

Upon the question of the amount of damages alleged to have been suffered by the plaintiff, the witness, J. Elmer O'Dell, no relation to the plaintiff, testified that "a close approximation as to what is directly affected would be about ten acres. An additional two acres would be remotely affected, or a total amount of around twelve acres." This witness also said in answer to a question: "I would say a very conservative estimate would be One Hundred ($100.00) Dollars an acre, to restore it back to its original use and productivity." This evidence was uncontradicted. Therefore, there was evidence upon which to base the verdict of the jury in the sum of One Thousand Dollars, the damage to the property being of a temporary nature.

It is the opinion of this Court that there was no error in the pleadings and instructions to the jury and sufficient evi-

dence to sustain the verdict in the sum of One Thousand Dollars against the defendants and that it was reversible error for the trial court to set aside the judgment entered thereon. Therefore, the judgment of the circuit court of Nicholas County of September 26, 1963, is reversed and the judgment of June 29, 1963, rendered upon the verdict in favor of plaintiff in the sum of One Thousand Dollars, is reinstated.

*Reversed; judgment reinstated.*