591 S.E.2d 197

Barbara S. TAYLOR, Chief, Office of Water Resources, West Virginia Division of Environmental Protection, Plaintiff Below, Appellee

and

Bobby J. Ball, Shirley Ball, and The Estate of Frances J. Ball, Intervenors Below, Appellants.

v.

CULLODEN PUBLIC SERVICE DISTRICT and WEST VIRGINIA–AMERICAN WATER COMPANY, Defendants Below, Appellees.

No. 31263.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 8, 2003.

Decided Nov. 24, 2003.

Joseph A. Lazelle, Division of Environmental Protection, Charleston, West Virginia, Attorney for the Appellee, Barbara S. Taylor.

William V. DePaulo, Ross & DePaulo, PLLC, Hurricane, West Virginia and Mary Anne Maul, Charleston, West Virginia, Attorneys for the Appellants.

John Philip Melick, Brian C. Helmick, Jackson & Kelly, Charleston, West Virginia, Attorney for the Appellee, West Virginia–American Water Company.

Ronald J. Flora, Milton, West Virginia, Attorney for the Appellee, Culloden Public Service District.

ALBRIGHT, Justice:

Appellants Bobby J. and Shirley Ball[1] seek a reversal of the February 7, 2002, order of the Circuit Court of Cabell County granting summary judgment to Appellees, the Culloden Public Service District ("CPSD") and the West Virginia–American Water Company ("WVAWC") in connection with the nuisance and trespass action Appellants brought against Appellees stemming

---

1. The action is also brought on behalf of the estate of Frances Ball, the mother of Bobby J. Ball.

from the alleged discharge of effluents into waters that flow across Appellants' property. The lower court dismissed Appellants' action below on statute of limitations grounds and for failure to state a claim for which relief could be granted. Upon our review of this matter, we determine that the lower court erred in dismissing Appellants' causes of action and, accordingly, we reverse and remand.

## I. Factual and Procedural Background

This action was spawned when the Balls, who live on property which is immediately adjacent to and downstream from the wastewater treatment facility in Culloden, filed a sixty-day notice of intent to sue Appellees on September 15, 1998, for violations of the federal Clean Water Act.[2] Appellants sought to force compliance with both the Clean Water Act and the West Virginia Water Pollution Control Act[3] (the "Act") in connection with the spewing of effluents[4] into the Indian Creek Fork by Appellees CPSD and WVAWC, as the operator of the Culloden wastewater treatment plant.[5] In the notice of intent to sue,[6] Appellants alleged violations of the federal Clean Water Act based on the continuous dumping of untreated sewage into Indian Creek Fork, which bisects their 4.69 acre tract of property.

On November 12, 1998, the West Virginia Division of Environmental Protection ("DEP") filed a civil action against CPSD and the WVAWC in the Circuit Court of Cabell County to seek enforcement of the Act. Through this action, DEP sought civil remedies and penalties as provided under the Act, as well as injunctive relief. The Balls moved to intervene in the DEP action pursuant to Rule 24 of the West Virginia Rules of Civil Procedure.[7] Appellants averred that WVAWC and CPSD had exceeded effluent limitations established in the National Pollutant Discharge Elimination System ("NPDES") permit issued to CPSD; failed to properly operate the wastewater facilities so as to prevent the discharge of raw sewage into this State's waters; and further failed to complete construction of a regional wastewater treatment plant by April 30, 1998.[8] When the circuit court denied their motion to intervene, the Balls sought extraordinary relief from this Court. Based on this Court's decision in *State ex rel. Ball v. Cummings* ("*Ball I*"), 208 W.Va. 393, 540 S.E.2d 917 (1999), Appellants were permitted to intervene as a matter of right under the provisions of Rule 24(a)(2).[9]

On January 27, 2000, the Balls filed their intervenor complaint in which they averred that the discharge of pollutants into the Indian Creek Fork constituted both a nuisance and a trespass action as against them and further constituted violations of both the state Act and the federal Clean Water Act. Appellants filed a motion for partial summary judgment on April 12, 2000, wherein they sought a ruling only as to violations of

---

**2.** *See* 33 U.S.C. § 1365(b)(1) (2000).

**3.** *See* W.Va.Code §§ 22-11-1 to -29 (1994) (Repl. Vol.2002).

**4.** By effluents, we are referring to raw, untreated sewage.

**5.** Upon obtaining approval from the West Virginia Public Service Commission on September 11, 1997, WVAWC has been the operator of the Culloden wastewater treatment plant pursuant to an Operation and Maintenance Agreement signed by WVAWC and CPSD on March 12, 1997. While CPSD is the permit holder and the technical owner of the property, the day-to-day operations are completely controlled by WVAWC.

**6.** This notice was served upon CPSD, WVAWC, DEP, and the U.S. Environmental Protection Agency.

**7.** Due to the DEP's timely filing of its suit, the Balls were precluded from filing a citizen's suit to enforce the Clean Water Act in federal court. *See* 33 U.S.C. § 1365(a).

**8.** In their motion to intervene, Appellants averred that Appellees' failure to construct the regional wastewater treatment plant by April 30, 1998, was a violation of the terms of the NPDES permit issued to CPSD on August 8, 1995.

**9.** We found that intervention was warranted based on the fact that the Balls claimed

an interest relating to the property or transaction which is the subject of the DEP action; the petitioners [the Balls] are so situated that the disposition of the DEP action may as a practical matter impair their ability to protect that interest; and the petitioners' interest is not adequately represented by the DEP.

*Ball I*, 208 W.Va. at 405, 540 S.E.2d at 929.

the Act, expressly reserving for later determination judgment as to their common law causes of action. At a hearing on April 21, 2000, the circuit court ordered CPSD and WVAWC not to engage in any further intentional discharge of raw sewage into the Indian Creek Fork, but deferred ruling on Appellants' motion for partial summary judgment. As a result of mediation that involved DEP, CSPD, and WVAWC, a consent decree was ultimately approved by the circuit court on May 29, 2001.[10] Pursuant to the consent decree, CPSD was assessed a monetary penalty,[11] and a compliance schedule was established under which higher effluent limits were permitted,[12] pending connection to the regional wastewater treatment system that was slated for July 30, 2003.[13]

On December 4, 2001, Appellants filed a motion for partial summary judgment seeking a ruling on the nuisance and trespass counts of their cause of action. CPSD filed a cross motion for summary judgment on December 7, 2001, in which it sought judgment on statute of limitations grounds, and WVAWC filed its cross-motion for summary judgment on December 14, 2001, asserting similar grounds. At the end of a hearing on these summary judgment motions on January 8, 2002, the trial court ruled from the bench that he was going to deny Appellants' motion, indicating that there were "basic material issues as to fact even as to whether they are correct parties and damages...." Citing issues of statute of limitations and Appellants' failure to demonstrate actions grounded in trespass or private nuisance, the circuit court granted summary judgment to CPSD and WVAWC. Appellants filed a mo-

tion for reconsideration of the summary judgment ruling, as well as a motion to amend their intervenor complaint to formally plead a public nuisance. By order entered on March 26, 2002, the circuit court denied both of these motions. Through this appeal, the Balls seek a reversal of the lower court's rulings and the opportunity to proceed to trial on this matter.

## II. Standard of Review

The *de novo* standard under which we review a grant of summary judgment is well-settled. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 4, *Painter*, 192 W.Va. at 190, 451 S.E.2d at 756. It is axiomatic that "[a] party who moves for summary judgment has the burden of showing that there is no genuine issue of fact and any doubt as to the existence of such issue is resolved against the movant for such judgment." Syl. Pt. 6, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963). With these standards in mind, we proceed to determine whether the lower court was in error in granting summary judgment in this matter to CPSD and WVAWC.

## III. Discussion

### A. Statute of Limitations

In granting summary judgment to CPSD and WVAWC on statute of limitations

10. The Balls were presented with the consent decree and invited to comment on the same as part of the public comment process. On December 7, 2000, and January 8, 2001, the Balls raised various objections to the consent decree, which included their claim that the immediate monetary penalty of $10,000 amounted to barely $8.00 a day for a long history of violating the NPDES permit. While the full monetary penalty was $100,000, $90,000 of that amount was permitted to be applied to the cost of a DEP approved project. Apparently, DEP allowed the additional $90,000 of the fine to be applied towards the costs of constructing the new regional wastewater treatment facility.

11. *See* note 10 *supra*.

12. The consent decree authorizes CPSD, or its contractor, "to determine the appropriate plant flow rate ... to achieve greater overall treatment efficiency of sewerage than if such influent loadings simply bypass the treatment facility altogether." Pursuant to a schedule attached to the consent decree, specified levels of discharge limitations were set forth for the interim period prior to the connection to the new regional treatment plant.

13. According to representations made during oral argument, construction of the regional wastewater treatment plant began in July 2003.

grounds, the circuit court narrowly viewed Appellants' nuisance cause of action set forth in the intervenor complaint as being solely private and permanent in nature. In their complaint, the Balls aver that the actions of CPSD and WVAWC "constitute a private nuisance, continuing nuisance and nuisance *per se.*" With absolutely no consideration of what effect the ongoing nature of the acts of nuisance at issue had on the applicable statute of limitations, the lower court simply determined that the two-year limitations period set forth in West Virginia Code § 55–2–12(a) (1959) (Repl.Vol.2000)[14] governed the Balls' nuisance and trespass causes of action. And, with minimal factual findings, the lower court concluded that the Balls were solely seeking damages for permanent injury to their land (i.e. diminution in fair market value) and found their action time barred due to their "fail[ure] to institute this action until January 1999" despite their "aware[ness] of the allegedly tortious operation of the [Culloden Public Service] District's plant as early as 1974."[15]

In making its ruling, the lower court appears to have circumvented its obligation to give the benefit of the doubt to the nonmoving party and to "draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion." *Peavy,* 192 W.Va. at 192, 451 S.E.2d at 758. Because Appellants were the non-moving parties with regard to the cross summary judgment motions raised by CPSD and WVAWC, they were entitled to the benefit of all reasonable inferences pertaining to when the applicable statute of limitations began to accrue. In this case, the lower court

seems to have worked backwards and looked for a date which would definitively place the Balls outside a two-year period prior to the filing of the intervenor complaint,[16] rather than affording Appellants the benefit of any factual inferences. Given our resolution of the statute of limitations issue, however, we find it unnecessary to identify a specific date by which the Balls were required to allege their common law claims.

█ In this case, there is no disagreement by Appellees that the problem upon which the Balls predicated their nuisance claim has been ongoing over the years and that the act of dumping raw sewage into the Indian Creek Fork continues even unto this day due to the outdated wastewater treatment plant and the overall inability of CPSD, under operational management of WVAWC,[17] to handle the volume of sewage influents it receives. Through the consent decree, CPSD and WVAWC both acknowledged that there have been past violations, as well as continuing violations,[18] of the Act based on

> failing to comply with the state water quality standards and effluent limitations, for discharging pollutants into waters of this State, for violating the West Virginia/National Pollutant Discharge Elimination System ... permit issued to Culloden by the State, and for failing to comply with administrative enforcement orders....

Mr. Ball produced both diary entries and corresponding calendar notations for 329 dates between July 1997 and March 1, 2001, on which he personally observed the dumping of raw sewage directly into the Indian

---

14. This statute provides for a two-year limitations period for personal actions involving damage to property where no other limitations period is prescribed. W.Va.Code § 55–2–12(a).

15. Mr. Ball testified that his father died in 1974 and that during his father's lifetime he was aware of possible water contamination because his father's cows refused to drink the water. He recalls seeing raw sewage in the creek sometime before 1985. After overhearing a comment made in July 1997 by a CPSD employee, Nathan Johnson, concerning the dumping of sewage during high volume periods, Mr. Ball began to visually monitor the effluents being dumped into the creek waters and to make a record of his sightings.

16. The Balls filed their intervenor complaint on January 27, 2000.

17. *See supra* note 5.

18. Counsel for WVAWC stated at the January 8, 2002, hearing on the parties' summary judgment motions,

> Now, I will admit that for purposes of summary judgment, we do not dispute that this plant is not operated routinely—and this has been the case for many years before the water company got there—in a way that causes it to exceed its limitations and its permit. That's why we were sued by the DEP to begin with.

Fork Creek, as well as videotape footage documenting these same events.[19] Appellees do not dispute that these incidents took place. Instead, they seek to prevent Appellants from legal recourse based on the passage of time.

▮ In their effort to convince the lower court that this action was time barred, Appellees argued that Appellants sought damages solely for permanent injury to their property in connection with their nuisance claim. Contrary to this argument, however, and the trial court's specific finding on this issue, the record demonstrates that the Balls sought damages for injuries other than mere diminution in property value. Appellants clearly sought damages for annoyance; discomfort; loss of use and enjoyment of part of their property;[20] and mental distress or aggravation associated with the periodic presence of effluents running on, over, or near their property. We observed in *West v. National Mines Corp.*, 175 W.Va. 543, 336 S.E.2d 190 (1985):

> The prevailing view is that recovery is not limited to damages to plaintiff's property and its rental value, but the owner of a residence or dwelling house occupied by him as a home is entitled to just compensation for annoyance, discomfort, and inconvenience caused by a nuisance ... even though he makes no showing of a monetary loss, or of bodily injury or illness.

*Id.* at 549, 336 S.E.2d at 197 (quoting 58 Am.Jur.2d, *Nuisances* § 123, at 692–93 (1971)). Accordingly, we find the lower court to be in error in its finding that the Balls only sought relief for permanent injury to their property through the filing of their nuisance action.

## 1. Permanent vs. Temporary Nuisance

Whether the Balls seek damages for a temporary or a permanent nuisance is critical for purposes of applying the statute of limitations. While the distinctions relevant to the issue of when the limitations period begins to run in a nuisance action have often proven difficult to categorize, various tests have been utilized to determine whether the nuisance is permanent or temporary in nature. *See State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 200 W.Va. 221, 243, 488 S.E.2d 901, 923 (1997). One such test, known as the "ability to abate" test provides that

> a nuisance is temporary or continuing where it is remediable, removable, or abatable, or if abatement is reasonably and practicably possible, or, according to some cases, where it is abatable at a reasonable cost, or by the expenditure of labor or money, by the defendant, or by legal process at the instance of the injured party, against the will of the person creating it. On the other hand, a nuisance is permanent if abatement is impracticable or impossible. Injuries to land are incapable of repair and thus permanent in nature when things attached to the land, such as timber, trees, soil, and buildings, are removed or destroyed. 58 Am.Jur.2d *Nuisances* § 29 (1989) (footnotes omitted).

*Kermit Lumber*, 200 W.Va. at 243, n. 26, 488 S.E.2d at 923 n. 26.

Another manner in which a nuisance action has been analyzed is to examine whether the acts constituting the nuisance produce damages that have a permanent affect on the value of the property involved. For example, in *Keene v. City of Huntington*, 79 W.Va. 713, 92 S.E. 119 (1917), this Court concluded that an incinerator plant which continuously emitted offensive odors was a permanent nuisance, reasoning that

> where the injury to real estate is such as to affect its value permanently, permanent damages can be recovered for that injury;

---

**19.** In responding to Appellants' partial summary judgment motion, the DEP stated in its brief filed on April 20, 2000, that "[t]o the extent that the videotape footage can [be] verified and authenticated, on its face, the footage shows acts of environmental degradation occurring adjacent to the Plaintiff–Intervenors' property, and violations of the WPCA [the Act] and the rules promulgated thereunder."

**20.** The Balls aver that they were unable to use almost three acres of their property due to the polluted condition of the Indian Creek Fork. Mr. Ball testified that to gain access to that portion of their property, a bridge would have to be constructed and that he was advised by DEP not to step into the water due to unsafe bacterial levels.

or, if the character of the agency, from the operation of which the injury arises, is such that it can reasonably be expected to continue for an indefinite time, and its operation in the ordinary and proper way produces the injury complained of, the plaintiff not only can, but he must, if he would recover damages at all, sue and recover permanent damages. He can have but one suit for the purpose.

*Id.* at 724–25, 92 S.E. at 124; *see also* Syl. Pt. 2, *Guinn v. Ohio River R.R. Co.,* 46 W.Va. 151, 33 S.E. 87 (1899) (holding that "[i]f a private nuisance is of such character that its continuance is necessarily an injury, and is of a permanent character, that will continue without change . . ., then the damage is original and permanent, and right of action at once exists for recovery of entire damages, past and future; . . . and there can be no second recovery for its continuance. It is otherwise where the damage is not continuous, but intermittent, occasional, or recurrent from time to time.").

■ We discussed the parameters of a temporary nuisance in *O'Dell v. McKenzie,* 150 W.Va. 346, 145 S.E.2d 388 (1965), a case in which the plaintiff was seeking compensation for damages to her property caused when waste materials from a strip mine would periodically float downstream, block the stream, and cause flooding of the plaintiff's property:

[W]here the cause of injury is in the nature of a nuisance, and not permanent in character, but such that it may be supposed that the defendant would remove it rather than suffer at once entire damages, which it might inflict if permanent, then the entire damages, so as to include future damages, can not be recovered in a single action, but actions may be maintained from time to time as long as the cause of the injury continues.

*Id.* at 350, 145 S.E.2d at 391 (citation omitted); *see also Kermit Lumber,* 200 W.Va. at 243, 488 S.E.2d at 923 (recognizing that " '[i]t has been said that a temporary nuisance is one where there is but a temporary interference with the use and enjoyment of property, and that, if a nuisance is a use which may be discontinued at any time, it is considered continuing in character' ") (quoting 58 Am. Jur.2d *Nuisances* § 28).

In *Kermit Lumber,* we were asked to determine whether soil contamination that resulted from a business engaged in lumber pressure treating created a temporary or a permanent nuisance. In reaching our decision, we found helpful the analysis used in *Arcade Water District v. United States,* 940 F.2d 1265 (9th Cir.1991), a case in which the Ninth Circuit Court of Appeals decided that the applicable two-year statute of limitations did not bar the water district's suit for contamination of its water well by a military laundry despite the closing of the laundry eight years prior to the suit's commencement. Applying California law, which defines a nuisance as permanent or temporary depending on " 'whether the nuisance may be discontinued or abated,' " the Ninth Circuit held that the nuisance at issue could not be viewed as permanent because "the contamination may abate . . . and Well 31 may be restored." *Arcade Water,* 940 F.2d at 1268 (quoting *Mangini v. Aerojet–Gen. Corp.,* 230 Cal.App.3d 1125, 1146, 281 Cal.Rptr. 827 (1991)). Extending that reasoning to the soil contamination at issue in *Kermit Lumber,* we determined that "[a]s long as the arsenic remains on the Kermit Lumber business site in amounts above the regulatory limits and as long as the arsenic is flowing into the Tug Fork River, the harm or nuisance continues and thus, is a continuing (or temporary) nuisance." *Kermit Lumber,* 200 W.Va. at 245, 488 S.E.2d at 925.

■ When we examine the allegations of nuisance in this case, it is not difficult to conclude that the acts of water pollution that constitute the core of the tortious acts at issue are temporary, rather than permanent, in nature. This is because the periodic dumping of effluents into the Indian River Fork, due to issues of the capacity of Culloden's wastewater treatment facility, should cease contemporaneous to CPSD's connection with the regional treatment plant. And, in contrast to most temporary nuisance cases where the temporal aspect of abatement remains uncertain, discontinuation of the nuisance under discussion appears likely in the near future since it is tied to the completion

of and operation of the regional wastewater treatment plant. Consequently, this case simply does not present facts indicative of a permanent nuisance, one in which a single cause of action is required and damages are measured by the permanent diminution in the land's value. *See Keene,* 79 W.Va. at 724–25, 92 S.E. at 124.

## 2. Continuing Tort

 Having determined that we are concerned with a temporary nuisance, the next question becomes when does the two-year statute of limitations accrue? Appellants urge us to adopt and apply this Court's recent ruling in *Graham v. Beverage,* 211 W.Va. 466, 566 S.E.2d 603 (2002), to this case. In syllabus point eleven of that decision, we held that "[w]here a tort involves a continuing or repeated injury, the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or when the tortious overt acts or omissions cease." *Id.* at 469, 566 S.E.2d at 606. Appellees suggest that since a nuisance was not the particular tort involved in *Graham,* our holding in that decision has no applicability to this case. There is no language in syllabus point eleven of *Graham* that limits its application to specific types of torts. As a result, that point of law was clearly intended to apply to torts of all types—not merely to the negligence type of action involved in *Graham.* Accordingly, we reject Appellees' contention that "this Court expressly excluded nuisance claims from its . . . ultimate holding" in *Graham.*

 Where, as in this case, the acts which constitute a nuisance are continuing in the sense that distinct instances of injury result from the nuisance, as opposed to a singular injury, and the acts of nuisance are capable of being abated or discontinued, the temporary nuisance continues until such time as those acts are abated or discontinued. Consequently, the two year statute of limitations set forth in West Virginia Code § 55–2–12(a) does not begin to run in a nuisance action where the tort at issue is both temporary and continuing until the date of the last injurious act or when the acts constituting the nuisance have been abated or discontinued. Applying this holding to the case *sub judice* requires the conclusion that the Balls' nuisance action is not barred by the applicable statute of limitations, as their complaint was clearly filed during the period when the acts constituting the nuisance at issue were ongoing.[21]

## B. Public v. Private Nuisance

Given our conclusion that the statute of limitations does not present a bar to Appellants' temporary nuisance claims, we find it unnecessary to discuss at length the issue of whether Appellants should have been permitted to amend their complaint to assert a public nuisance claim. Because the Balls have not been precluded from seeking recovery for any damages that they can prove in connection with their temporary nuisance claim, there is no need for Appellants to seek the benefit of this Court's recognition in *Kermit Lumber* that violations of the Act, such as the spewing of sewage or effluents into this state's waters, are continuing violations for which the one-year statute of limitations[22] does not begin to run until the "harm or endangerment to the public health, safety and the environment is abated."[23] *Kermit Lumber,* 200 W.Va. at 225, 488 S.E.2d at 905, syl. pt. 11, in part.

 We observe, however, that Appellees mistakenly conclude that the Balls are without standing to bring a public nuisance cause of action. While it is clear that the Act does not, unlike its federal counter-

---

**21.** While the issue of recoverable damages is not properly before us, we note that the damages that the Balls can recover in connection with a temporary nuisance are limited to the two-year period in time prior to the filing of their cause of action. *See generally State ex rel. Cutlip v. Sawyers,* 147 W.Va. 687, 691, 130 S.E.2d 345, 348 (1963). We further observe that successive actions can be filed to recover additional damages

for temporary nuisances that occur subsequent to the filing of the initial nuisance suit.

**22.** *See* W.Va.Code § 55–2–12(c).

**23.** The record suggests that the Balls' motion to amend their complaint to plead public nuisance was prompted by the lower court's statute of limitations ruling.

part, contain a citizen's suit provision, Appellees incorrectly assume that the absence of such provision bars private citizens, such as the Balls, from bringing lawsuits in connection with nuisances that are alleged to affect the corporate health and welfare of the public. The Act is clear that its provisions were enacted

> to provide additional and cumulative remedies to abate the pollution of the waters of the state and *nothing herein contained shall abridge or alter rights of action or remedies now or hereafter existing. . . .*
>
> The provisions of this article inure solely to and are for the benefit of the people generally of the state of West Virginia, and this article is not intended to in any way create new, or enlarge existing rights of riparian owners or others.

W.Va.Code § 22–11–27 (emphasis supplied). The enactment of our Water Pollution Control Act, the objective of which is to provide the State with an enforcement mechanism for keeping the waters of this State free of pollutants, clearly left intact all existing common law actions for public nuisance. *See Hark v. Mountain Fork Lumber Co.,* 127 W.Va. 586, 595–96, 34 S.E.2d 348, 354 (1945) (noting distinction between public and private nuisance is that former affects general public and latter affects limited number of persons and that public officials ordinarily are proper parties to bring public nuisance actions). Accordingly, the DEP's action in filing a ·claim under the Act did not stand as a bar to the filing of a public nuisance action by the Balls or any other affected citizens.[24]

In this Court's opinion, this case aptly demonstrates the need for common law remedies in addition to the Act, especially where it is arguable that the government agency charged with protecting the public's interests may not be acting with sufficient alacrity to eradicate the alleged nuisance which may be presenting serious public health concerns or posing a potential environmental hazard. The Balls had tried for years to get the situation resolved—only when they were con-

vinced that nothing short of legal action was going to make a difference did they file their notice of intent to sue. Even when the DEP got involved in this action, there was little indication that the gravity of what the Balls had been enduring for years was duly appreciated. Instead, everyone, including the trial court, agreed to look the other way until the regional wastewater treatment plant was built, based on the collective opinion that "there is no practical, immediate alternative to eliminate the plant's problems in the meantime." [25]

Nuisance law, as we recognized in *Sharon Steel Corp. v. City of Fairmont,* 175 W.Va. 479, 334 S.E.2d 616 (1985), "has been particularly effective in addressing environmental problems." *Id.* at 484, 334 S.E.2d at 621. Observing that " '[n]uisance theory and case law is the common law backbone of modern environmental and energy law,' " we offered this commentary:

> "There is simply no common law doctrine that approaches nuisance in comprehensiveness or detail as a regulator of land use and of technological abuse. Nuisance actions have involved pollution of all physical media—air, water, land—by a wide variety of means. . . . Nuisance actions have challenged virtually every major industrial and municipal activity which is today the subject of comprehensive environmental regulation—the operation of land fills, incinerators, sewage treatment facilities, activities at chemical plants, aluminum, lead and copper smelters, oil refineries, pulp mills, rendering plants, quarries and mines, textile mills and a host of other manufacturing activities."

*Sharon Steel,* 175 W.Va. at 484, 334 S.E.2d at 621 (*quoting* W. Rodgers, Jr., Handbook on Environmental Law § 2.1 at 100 (1977)). Were it not for the availability of nuisance actions as a remedy, it seems certain an inestimable number of business and private actions that have deleterious health and environmental results as a byproduct of their operations would have continued unabated.

---

24. In light of the continuing nature of the water polluting acts at issue in this case, we find the lower court's conclusion that "[t]he purpose of a public nuisance action [abatement of harm af-

fecting the public health and safety] has already been achieved" highly questionable.

25. Summary Judgment Order, February 7, 2002.

We take a dim view of WVAWC's suggestion that a reversal of the lower court's ruling will effectively halt other companies from ever agreeing to assume operation of utilities which are experiencing difficulties. We similarly find offensive the suggestion that the social value of providing a wastewater treatment plant so outweighs the gravity of the harm experienced by the Balls that there can be no recovery under nuisance law on the facts of this case. *See generally, Hendricks v. Stalnaker*, 181 W.Va. 31, 34–35, 380 S.E.2d 198, 201–02 (1989) (discussing use of balancing test for determining whether interference with landowner's private use and enjoyment of property is unreasonable and, therefore, a nuisance). Operating a business or providing a service that has societal benefits does not give a corporate entity license to freely pollute the waters of this State or to negatively affect the use and enjoyment of privately owned property.

## C. Issues of Material Fact

■■■■ To be clear, however, we are not suggesting that the Balls are assured of a successful verdict at the conclusion of a trial in this matter. Barring one instance of water sampling that occurred in 1997,[26] water and soil samples were not taken. Consequently, Appellants have not preserved some types of evidence that might be persuasive on a jury as to the existence of the alleged nuisance. Given the stage of this matter, however, the issue of whether the Balls' evidence will prove adequate to convince a jury of the alleged nuisance they have endured or even whether they have sufficient evidence of damages is not before us. All that we can determine at this procedural juncture is that the lower court failed to properly apply the standard for ruling on a summary judgment motion. As we recognized in *Harris v. Jones*, 209 W.Va. 557, 550 S.E.2d 93 (2001), "[t]he standard for summary judgment is high." *Id.* at 561, 550 S.E.2d at 97. And, " 'even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom,' "

summary judgment should still be denied. *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 59, 459 S.E.2d 329, 336 (1995) (*quoting Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir.1951)). This is because " 'the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' " *Williams*, 194 W.Va. at 59, 459 S.E.2d at 336 (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

That the lower court exceeded its function and usurped that of the jury seems clear from this language in the summary judgment ruling:

> No evidence has been presented to show that Defendants [Appellees] committed a trespass or a private nuisance upon Intervenors' property. By their own testimony, Intervenors have suffered no physical or emotional injury to their person, have presented no evidence of an encroachment upon their land, nor presented any evidence of damage to their property. Additionally, by their own testimony, Intervenors have developed in recent years and continue to use and enjoy some of the very property they allege to have been denied the use and enjoyment of.

Rather than assessing the evidence presented to determine the existence of any material facts, as is the task of the trial court on a summary judgment motion, the court engaged in a weighing of the evidence. Under the trial court's reasoning, because the Balls had actually used their property for some recreational purposes, they cannot be said to have suffered a nuisance for which they would be entitled to damages.[27] This is clearly a question more suited for the jury and not one that typically is answered by means of a summary judgment ruling. The court similarly engaged in a weighing of the evidence in stating that the Balls suffered no emotional injury. While it would be accurate to state that Appellants did not seek out psychological counseling or medical treat-

---

**26.** Mr. Ball testified that he took water samples to the DEP in 1997.

**27.** Moreover, the record makes clear that the portion of the property that the Balls "developed" was not the property that they claim to have been denied the use and enjoyment of by means of inaccessibility to the creek waters.

ment for emotional trauma, to find that they had no emotional-related injury such as annoyance or discomfort arising from the presence of offensive odors or sights, which were allegedly present when effluents were dumped into the Indian Creek Fork, is simply not veracious. And, as to the ultimate issue of whether the Balls have demonstrated a nuisance as a result of the actions of Appellees, this too must be resolved by a jury. *See* Syl. Pt. 3, *Sticklen v. Kittle*, 168 W.Va. 147, 287 S.E.2d 148 (1981) (holding that "[a]s a general rule, a fair test as to whether a particular use of real property constitutes a nuisance is the reasonableness or unreasonableness of the use of the property in relation to the particular locality involved, and ordinarily such a test to determine the existence of a nuisance raises a question of fact").

In view of the record of this case, which clearly includes evidence of acts that may be determined by a jury to have constituted a nuisance as regards the Balls, it was highly improper of the trial court to summarily conclude that Appellants had presented no evidence of a nuisance. While Appellees argue that the Balls cannot demonstrate trespass as a matter of law based on their failure to show that effluents actually invaded their property, rather than just the property of the State, this too should be a factual determination left for the jury's determination. When this matter proceeds to trial, Appellants are entitled to demonstrate how they have been effected by the ongoing release of effluents by Appellees in terms of annoyance, discomfort, inconvenience, and all other remediable damages arising from their allegations of nuisance.

Based on the foregoing, the decision of the Circuit Court of Cabell County is reversed and this action is remanded for trial and other further proceedings.

Reversed and remanded.