**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

Ronald R. Robertson, Jr., and Dennis P. Samson,
**Plaintiffs Below, Petitioners**

**vs.)  No. 20-0341** (Morgan County 19-C-19)

**David P. Cohen and Monya J. Cohen,**
**Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioners Ronald R. Robertson, Jr., and Dennis P. Samson, by counsel Eric S. Black, appeal the March 11, 2020, order of the Circuit Court of Morgan County that granted respondents David P. and Monya J. Cohen's motion for summary judgment in petitioners' nuisance and invasion of privacy action. Respondents, by counsel Richard G. Gay, respond in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioners own a home on a 4.7-acre lot in Quaint Hills Woods, a rural subdivision in Berkeley County near Cacapon Mountain. Petitioners reside in that home about two weeks each month. Respondents, the "Cohens," own a home on a 20.58-acre lot that is adjacent to petitioners' lot, but located in a different subdivision, the Quaint Hills Mountain Section. The Cohens use their home on weekends. Petitioners, respondents, and the other residents of respondents' subdivision access their lots using a forty-foot-wide right-of-way that runs off County Route 9/18 and over respondents' acreage.

In October of 2018, respondents' informal homeowners' association authorized some of its members, including defendant below Carl E. Hillsman,[1] to erect a "Mighty Mule Steel Dual Swing Driveway Fence Gate" (the "new gate") on the right-of-way over respondents' property. The new gate replaced a former hand-operated gate and was installed 75 feet past the entrance to

---

[1] Carl E. Hillsman, a named defendant below, is now deceased. Petitioners did not substitute Mr. Hillsman's estate into this action – as required by Rule 25 of the West Virginia Rules of Civil Procedure – by the circuit court's October 9, 2019, deadline. Accordingly, Mr. Hillsman is no longer a party to the case below and is not a party to the instant appellate action.

petitioners' driveway, and 175 feet from petitioners' house. The new gate has a keypad/solar entry panel and makes a beeping sound when it opens and closes. Specifically, the new gate beeps for thirty-one seconds when it opens and for thirty seconds when it closes. Respondents' homeowner's association also approved the installation of a halide area light that was mounted on a sixteen-foot pole near the gate. The halide light replaced a motion-activated light that was located near the old manual gate. Located to the right of the new gate is a turnaround area. The parties dispute whether this area is of a sufficient size to allow drivers to use the space as a turnaround. Petitioners claim that once the new gate was installed, drivers who could not open the new gate backed their vehicles down the right-of-way and then used petitioners' driveway as a turnaround. Thereafter, Mr. Hillsman – on his own accord – installed a camera near the gate. Mr. Hillsman had exclusive access to the recordings generated by the camera, which showed, among other things, part of petitioners' house and yard.

Petitioners filed a complaint against respondents and Mr. Hillsman alleging nuisance and invasion of privacy due to the installation of the new gate, camera, and new light.[2] Petitioners pled that respondents' actions materially and substantially altered the natural lighting, peaceful sounds, and natural environment of their property causing continuous distress and anxiety to petitioners and their guests. Petitioners also pled that respondents and Mr. Hillsman caused substantial aesthetic damage to petitioners' real property and substantially and unreasonably impaired their privacy and the quiet enjoyment of their home.

The parties attempted to mediate their dispute without success. The day after the mediation, the new light was moved, and a week later a shield was placed on the new light so that it did not shine onto petitioners' property. The camera installed by Mr. Hillsman was also moved so that it no longer viewed petitioners' house and lot.

Petitioner Dennis P. Samson testified at his deposition as follows: Petitioners live half-time in West Virginia and half-time in Massachusetts and they have owned their Quaint Hills Woods property for about eleven years. He can see the light near the gate when the leaves are off the trees. When the leaves are on the trees, he has to look for the gate to see it. He wants the gate and the light removed because they are "ugly," and he wants "nothing" put in their place. He claimed that the gate causes backups at the turnaround area. He further testified that he and Mr. Robertson put a chain across their driveway to stop cars from turning around in it; that two or three cars turnaround at the gate per week; and that about six to twelve cars go through the gate a day. He said that the installation of the camera resulted in an invasion of petitioners' privacy because the camera captured petitioners' house and the people going in and out of their yard. He further claimed that, although petitioners cannot hear the gate beeping when it opens and closes, their dog can hear it and, when he does, he barks. He asserted that the stress from the "last year" and this lawsuit were factors in his heart attack. He believed that the gate reduced the value of his property; however, he had not had his property reappraised since the installation of the new gate and he said that he did not intend to do so. He admitted that respondents were not responsible for the camera. He claimed that as a result of the new gate, camera, and new light, petitioners spent about $100.00 for signs, $213.91 for the chain across their driveway, and $369.72 for shades for their bedroom windows.

---

[2] Petitioners also alleged destruction of property against Mr. Hillsman.

Petitioner Ronald R. Robertson, Jr. testified in his deposition as follows: He purchased the subject property in 2003. The old gate was fifteen to twenty feet closer to his house than the new gate. His privacy was invaded when the camera picked up his house and part of his yard. He agreed that people turn around at the gate two or three times a week. He said that after the mediation, a shield was placed on the light and, therefore, he can no longer see light in his house and the "light footprint" on his property has been reduced. However, he stated that he does not want to see the light at all. He also said that he can sometimes hear the gate beeping as it opens and closes. Finally, he said that he did not contact respondents about the gate or light, but he left them a message.

Respondent David P. Cohen testified during his deposition as follows: In 2016, a homeowner in the Quaint Hills Mountain Section expressed concern about his wife's safety given that she had to get out of her car to open the gate to enter the subdivision and, therefore, was open to attack by humans and/or animals. He explained that, in 2018, the members of the Quaint Hills Mountain Section's homeowners association agreed to upgrade the manual gate at the entrance to the subdivision due, in part, to trespassing hunters and four-wheelers, and given that drug paraphernalia was found on one of the subdivision's properties. He said that he suggested that one of the full-time residents speak with the homeowners who lived nearby but outside the Quaint Hills Mountain Section to ensure they were on board with the project and were aware of the construction schedule. Mr. Cohen testified that Mr. Hillsman (1) helped install the new gate and the new light to prevent drivers from inadvertently hitting the gate, and (2) took it upon himself to install the camera. Mr. Cohen averred that he did not give Mr. Hillsman permission to install the camera, that he confronted Mr. Hillsman when he learned about the camera, and that he told Mr. Hillsman he should have talked to others before installing the camera. Mr. Cohen did not mention the matter to petitioners because he assumed that another member of the homeowner's association had done so. Mr. Cohen claimed that he purchased key fobs for petitioners and the other bordering neighbors so that they could remotely open and close the gate. Mr. Cohen opined that there is sufficient room to the right of the new gate for a car to turn around. Mr. Cohen also said that when he learned that petitioners were concerned about the new light, he purchased a new light to replace the problematic light; however, after the mediation in this matter, others moved the new light and put a shield on it. Finally, Mr. Cohen testified that there was no difference regarding cars turning around at the old gate and the new gate, except that the cars had more room to turn around after the new gate was installed.

Respondents' expert, Mark Sokalski, a registered chemical engineer, testified as follows: The new lamp is a dusk to dawn lamp and has now been shielded. No light from the lamp can be measured at petitioner's driveway or in their bedroom. As for the sound of the gate opening and closing, it cannot be heard at petitioner's driveway, and cannot be heard by humans in petitioners' bedroom. Mr. Sokalski further testified that Morgan County's Noise Ordinance provides that noise levels in excess of sixty-five decibels, either intermittent or continuous, for a period of at least thirty minutes, violate that noise ordinance. Finally, he opined that the opening and closing of the gate and the concomitant beeping for sixty-one seconds do not violate the noise ordinance.[3]

---

[3] The record on appeal indicates that, at the gate, the beeping sounds at sixty-seven to seventy decibels. At the entrance to petitioner's driveway, the beeping sounds at about forty to forty-three decibels.

3

Respondents moved for summary judgment claiming that petitioners did not raise any issues of material fact in their nuisance or invasion of privacy claims. By order entered March 11, 2020, the circuit court agreed and granted respondents' motion concluding that "the determination of whether or not a nuisance has been proved by [petitioners] requires more than [petitioners'] reliance on the bald allegations in their Complaint, and requires a showing of a material disputed fact, which did not occur here." As for petitioners' invasion of privacy claim, the circuit court found that the security camera directed at the new gate did not satisfy the definition of invasion of privacy as found in Syllabus Point 8 of *Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 320 S.E.2d 70 (1984) ("An 'invasion of privacy' includes . . . an unreasonable intrusion upon the seclusion of another[.]") The court also noted that the camera had been moved and no longer showed petitioner's house or yard, and that petitioners admitted that respondents never surveilled their house and that no pictures were taken of them by the camera except when they were in the right-of-way or in their driveway in full view of the gate. Finally, the court found that petitioners admitted respondents were not responsible for the installation of the camera or any surveillance by it; that Mr. Hillsman was no longer a party to this case as petitioners failed to substitute his estate as a party defendant; and that petitioners admitted that no one trespassed on their property, took pictures of them or their guests, looked in their windows, or in any way bothered them at any time.

Petitioners now appeal. We review the circuit court's entry of summary judgment de novo. *See* Syl. Pt. 1 *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

> Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

Petitioners raise two assignments of error on appeal. Petitioners first argue that the circuit court erred in granting respondents' motion for summary judgment because they were entitled to have their nuisance claims adjudicated by a jury as provided in *Taylor v. Culloden Public Service District,* 214 W. Va. 639, 591 S.E.2d 197 (2003). In *Taylor*, the plaintiffs appealed the circuit court's dismissal of their nuisance action. This Court reversed on the ground that the circuit court failed to properly apply the standard for ruling on a summary judgment motion. Petitioners highlight the following language from *Taylor*:

> Rather than assessing the evidence presented to determine the existence of any material facts, as is the task of the trial court on a summary judgment motion, the court engaged in a weighing of the evidence. Under the trial court's reasoning, because the Balls [intervenors below/appellants] had actually used their property for some recreational purposes, they cannot be said to have suffered a nuisance for which they would be entitled to damages. This is clearly a question more suited for the jury and not one that typically is answered by means of a summary judgment ruling. The court similarly engaged in a weighing of the evidence in stating that the Balls suffered no emotional injury. . . . And, as to the ultimate issue of whether the

4

Balls have demonstrated a nuisance as a result of the actions of Appellees, this too must be resolved by a jury. *See* Syl. Pt. 3, *Sticklen v. Kittle*, 168 W.Va. 147, 287 S.E.2d 148 (1981) (holding that "[a]s a general rule, a fair test as to whether a particular use of real property constitutes a nuisance is the reasonableness or unreasonableness of the use of the property in relation to the particular locality involved, and ordinarily such a test to determine the existence of a nuisance raises a question of fact").

In view of the record of this case, which clearly includes evidence of acts that may be determined by a jury to have constituted a nuisance as regards the Balls, it was highly improper of the trial court to summarily conclude that Appellants had presented no evidence of a nuisance.

*Taylor*, 214 W. Va. at 649-50, 591 S.E.2d at 207-08. Petitioners contend that the circuit court failed to address their argument that the question of nuisance is one for a jury and, instead, analyzed the evidence and found that petitioners failed to demonstrate nuisance or invasion of privacy. Petitioners highlight that "[t]he circuit court's function at the summary judgment stage is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986)." *Williams*, 194 W. Va. at 59, 459 S.E.2d at 336. Petitioners argue that a jury should have determined whether respondents' action constituted a nuisance, and the damages, if any.

Petitioners, however, misunderstand the point of the circuit court's ruling, which was the result of a straightforward application of the summary judgment standard to the parties' briefs, exhibits, and depositions; respondents' expert's report; and the law relating to nuisances. That application demonstrated the lack of genuine and material facts in dispute in regard to petitioners' nuisance claim. "A 'trialworthy' issue requires not only a 'genuine' issue but also an issue that involves a 'material' fact. *See Anderson,* 477 U.S. at 248 . . . ." *Williams*, 194 W. Va. at 60, 459 S.E.2d at 337. "[T]he term 'material' means a fact that has the capacity to sway the outcome of the litigation under the applicable law." *Id.* at 60 n.13, 459 S.E.2d at 337 n.13 (citations omitted). Petitioners did not direct the circuit court or this Court to any material facts in dispute. Instead, they pointed to the allegations in their complaint which fail to show any disputed material facts. Petitioners also rely on a series of e-mails between the homeowners in respondents' subdivision regarding the security camera in an attempt to create a disputed issue of material fact regarding their claim of invasion of privacy against Mr. Hillsman. As the circuit court found, those emails do not prove any of petitioners' claims and, instead, relate only to the installation of the gate, light, and camera.

Petitioners rely solely on *Taylor* for their claim that a jury must decide whether a nuisance exists. In *Taylor*, we reversed the circuit court's summary judgment order in a nuisance action regarding raw sewage on the plaintiffs' land and found that the plaintiffs produced ample evidence of their claim. In that regard, we said,

[g]iven the stage of this matter, however, the issue of whether the [plaintiffs'] evidence will prove adequate to convince a jury of the alleged nuisance they have

endured or even whether they have sufficient evidence of damages is not before us. All that we can determine at this procedural juncture is that the lower court failed to properly apply the standard for ruling on a summary judgment motion. As we recognized in *Harris v. Jones*, 209 W.Va. 557, 550 S.E.2d 93 (2001), "[t]he standard for summary judgment is high." *Id.* at 561, 550 S.E.2d at 97. And, "'even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom,'" summary judgment should still be denied. *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 59, 459 S.E.2d 329, 336 (1995) (*quoting Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir.1951)). This is because "'the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Williams*, 194 W.Va. at 59, 459 S.E.2d at 336 (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

*Taylor*, 214 W. Va. at 649, 591 S.E.2d at 207. *Taylor* is not applicable here because, as the circuit court found, petitioners did not proffer any evidence refuting respondents' facts.

As for petitioners' contention that they had a right to a jury trial in a case seeking a permanent injunction, we ruled in *Weatherholt v. Weatherholt*, 234 W. Va. 722, 769 S.E.2d 872 (2015), a case concerning a permanent injunction to prohibit obstructions on a right-of-way and whether a jury trial was required, as follows:

In the petitioners' first argument on the jury trial issue, they aver that the circuit court erred in denying them a jury trial on the permanent injunction issue. The petitioners are incorrect. Generally, there is no right to a jury trial in a proceeding in which a permanent injunction is sought. This is because at common law, a proceeding in which a permanent injunction was sought was heard in a court of equity, and there is no right to a jury trial in a matter traditionally heard at equity. It has long been the law of this State that "[a] court of equity has jurisdiction, by injunction, to prevent a continuing material interference with an easement." Syl. pt. 4, *Johnson v. Gould*, 60 W.Va. 84, 53 S.E. 798 (1906). Further, "[s]ince equitable issues are generally determined by a court without a jury, one is not entitled, as a matter of right under the law, to a jury trial of such issues. . . ." Syl. pt. 1, in part, *Human Rights Comm'n v. Tenpin Lounge*, 158 W.Va. 349, 211 S.E.2d 349 (1975). In addition, this Court has indicated that "[w]here already, at the time of the adoption of the Constitution, equity exercised jurisdiction in a certain matter, the provision of the Constitution guarantying trial by jury does not relate to or give right to trial by jury in suits in equity involving such matter." Syl. pt. 7, *Davis v. Settle*, 43 W.Va. 17, 26 S.E. 557 (1896); *see also Bishop Coal Co. v. Salyers*, 181 W. Va. 71, 77, 380 S.E.2d 238, 244 (1989) ("Suits in equity were tried without juries."); *Marthens v. B & O Railroad Co.*, 170 W.Va. 33, 38 n. 2, 289 S.E.2d 706, 712 n. 2 (1982) ( "[T]hose issues heretofore decided in equity should today be tried to the judge alone."). Finally, as noted above, "the power to grant or refuse . . . a permanent injunction . . . ordinarily rests in the sound discretion of the trial court [not a jury], according to the facts and the circumstances of the particular case. . . ." Syl. pt. 11, *Stuart*, 141 W.Va. 627, 92 S.E.2d 891. Therefore, we conclude that

6

the circuit court did not err in denying the petitioners a jury trial on the respondent's suit for a permanent injunction.

*Weatherholt*, 234 W. Va. at 727, 769 S.E.2d at 877. *See also Witteried v. The City of Charles Town*, No. 17-0310 (W. Va. May 11, 2018)(memorandum decision). In light of these cases, we reject petitioners' first assignment of error.

In petitioners' second assignment of error, they argue that the circuit court erred in ruling that respondents' efforts at mitigation/subsequent remedial measures dissolved or eliminated any existing nuisance. The circuit court found that "[s]ince nuisance is an equitable principle which requires the [c]ourt, under certain circumstances, not present here, to abate, the [c]ourt concludes there is nothing to abate that now constitutes a nuisance." The circuit court highlighted that a shade had been put on the new light and that the camera had been relocated and, therefore, no longer viewed petitioners' house or property. Petitioners counter that mitigation/remedial measures do not preclude them from proving their nuisance and violation of privacy case and from seeking damages for those claims. Petitioners admit, however, that mitigation/remedial measures may ameliorate some of the claimed nuisance.

We agree with respondents. Here, the circuit court did not err in finding that respondents' mitigation/subsequent remedial measures dissolved or eliminated any claimed existing nuisance. First, any invasion of privacy was mitigated. As petitioners acknowledged, the camera installed by Mr. Hillsman (without the approval or involvement of respondents) was moved and, therefore, no longer captures images of petitioners' house. Further, it is undisputed that the light by the gate was moved and shielded; thus, no light can be measured at the gate to petitioners' property or inside their house. Moreover, respondents' expert testified that the beeping sound made as the gate opens and closes cannot be heard in petitioners' driveway or their bedroom. In fact, Petitioner Samson admitted during his deposition that he could not hear the gate opening and closing from his bedroom. Accordingly, the circuit court found, and we agree, that there was no nuisance to abate.

Mere annoyance or inconvenience does not constitute an actual nuisance. Instead,

> "the term ['nuisance'] is generally 'applied to that class of wrongs which arises from the unreasonable, unwarrantable or unlawful use by a person of his own property and produces such material annoyance, inconvenience, discomfort, or hurt that the law will presume a consequent damage.'" *Harless*, 145 W.Va. at 274, 114 S.E.2d at 552 (citation omitted). Stated another way, "nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his or her property." 58 Am.Jur.2d *Nuisances* § 2 (2002).

*Booker v. Foose*, 216 W. Va. 727, 730, 613 S.E.2d 94, 97 (2005).

"An interference with the private use and enjoyment of another's land is unreasonable when the gravity of the harm outweighs the social value of the activity alleged to cause the harm." Syl. Pt. 2, *Hendricks v. Stalnaker*, 181 W. Va. 31, 380 S.E.2d 198 (1989). Here, the "gravity of the harm" included trespassers and drug users on landowners' property in the Quaint Hills Mountain

7

Section, and the risk to residents of attack from persons or wildlife. That risk of harm greatly outweighs any slight inconvenience petitioners may experience from having a vehicle turning around at the new gate two or three times a week.

In *Bansbach v. Harbin*, 229 W. Va. 287, 728 S.E.2d 533 (2012), this Court found that,

> Critical to understanding the reach of nuisance law is recognition of the fact that "[r]ecovery for a private nuisance is limited to plaintiffs who have suffered a significant harm to their property rights or privileges caused by the interference." *Hendricks*, 181 W.Va. at 34, 380 S.E.2d at 201 (citing Restatement (Second) of Torts §§ 821E, 821F (1979)); *see also Martin v. Williams*, 141 W.Va. 595, 611, 93 S.E.2d 835, 844 (1956) (describing nuisance as involving material reduction in homeowner's enjoyment of property and material interference with physical comfort of persons in their homes). Illustrative of this need to demonstrate significant harm is *Karpiak v. Russo*, 450 Pa.Super. 471, 676 A.2d 270 (1996), a case in which homeowners sought to enjoin a landscaping business on grounds that the operation of noisy machinery, foul odors, and escaping dust all constituted a private nuisance. In affirming the trial court's dismissal of the action, the appellate court explained "that while appellees' actions may have been annoying and a cause of inconvenience, as a matter of law, appellants failed to establish that the invasion was seriously annoying or intolerable." 676 A.2d at 273. As the Iowa Supreme Court aptly observed in *Mohr v. Midas Realty Corp.*, 431 N.W.2d 380 (Iowa.1988), "[n]ot every interference with a person's use and enjoyment of land is actionable." *Id.* at 381 (citing Restatement (Second) of Torts § 822 cmt. clause (a)).

*Bansbach* at 292, 728 S.E.2d at 538. Here, petitioners failed to show that respondents used the right-of-way in an unreasonable, unusual, or unnatural way, such that it substantially impaired petitioners' right to use and enjoy their own property.

Accordingly, for the foregoing reasons, we affirm the March 11, 2020, order granting respondents' motion for summary judgment in petitioners' nuisance and invasion of property action.

Affirmed.

**ISSUED:** June 23, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton