IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2015 Term

_____

No. 14-0219

_____

FILED

February 26, 2015
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

DANIEL ALLEN WEATHERHOLT AND
ANITA DENICE WEATHERHOLT,
Defendants Below, Petitioners

v.

JEFFREY NEAL WEATHERHOLT,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Hardy County
Honorable H. Charles Carl, III, Judge
Civil Action No. 13-C-52

AFFIRMED

_____

Submitted: January 27, 2015
Filed:  February 26, 2015

Jason R. Sites, Esq.                           J. David Judy, III, Esq.
Sites Law Firm, PLLC                       Judy & Judy
Keyser, West Virginia                        Moorefield, West Virginia
Attorney for Petitioners                     Attorney for Respondent

JUSTICE BENJAMIN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "Unless an absolute right to injunctive relief is conferred by statute, the power to grant or refuse or to modify, continue, or dissolve a temporary or a permanent injunction, whether preventive or mandatory in character, ordinarily rests in the sound discretion of the trial court, according to the facts and the circumstances of the particular case; and its action in the exercise of its discretion will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion." Syl. pt. 11, *Stuart v. Realty Corp.*, 141 W. Va. 627, 92 S.E.2d 891 (1956).

2.      "In reviewing challenges to findings and rulings made by a circuit court . . . we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syl. pt. 3, in part, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

3.      "A court of equity has jurisdiction, by injunction, to prevent a continuing material interference with an easement." Syl. pt. 4, *Johnson v. Gould*, 60 W. Va. 84, 53 S.E. 798 (1906).

4.      "Since equitable issues are generally determined by a court without a jury, one is not entitled, as a matter of right under the law, to a jury trial of such issues. . .

." Syl. pt. 1, in part, *Human Rights Comm'n v. Tenpin Lounge*, 158 W. Va. 349, 211 S.E.2d 349 (1974).

5.      "Where already, at the time of the adoption of the Constitution, equity exercised jurisdiction in a certain matter, the provision of the Constitution guaranteeing trial by jury does not relate to or give right to trial by jury in suits in quity involving such matter." Syl. pt. 7, *Davis v. Settle*, 43 W. Va. 17, 26 S.E. 557 (1896).

6.      "A person claiming a prescriptive easement must prove each of the following elements: (1) the adverse use of another's land; (2) that the adverse use was continuous and uninterrupted for at least ten years; (3) that the adverse use was actually known to the owner of the land, or so open, notorious and visible that a reasonable owner of the land would have noticed the use; and (4) the reasonably identified starting point, ending point, line, and width of the land that was adversely used, and the manner or purpose for which the land was adversely used." Syl. pt. 1, *O'Dell v. Stegall*, 226 W. Va. 590, 703 S.E.2d 561 (2010).

7.      "In the context of prescriptive easements, an "adverse use" of land is a wrongful use, made without the express or implied permission of the owner of the land. An "adverse use" is one that creates a cause of action by the owner against the person claiming the prescriptive easement; no prescriptive easement may be created unless the person claiming the easement proves that the owner could have prevented the wrongful

use by resorting to the law." Syl. pt. 5, *O'Dell v. Stegall*, 226 W. Va. 590, 703 S.E.2d 561 (2010).

Benjamin, Justice:

Petitioners Daniel and Anita Weatherholt appeal the January 15, 2014, order of the Circuit Court of Hardy County that granted injunctive relief to the plaintiff below and respondent herein, Jeffrey Weatherholt. The order prohibited the petitioners from placing any obstructions in the respondent's right-of-way and concluded that the current location of the respondent's water line is an appurtenant prescriptive easement through the petitioners' property. For the reasons set forth below, we affirm the circuit court's order.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioners, Daniel Weatherholt and his wife Denice Weatherholt, are the owners of a tract of real estate on which they reside in Hardy County which is located just off of a public road known as Frosty Hollow Road. The petitioners acquired this land in 2001 from Daniel Weatherholt's grandmother, Ruth Barr. Daniel Weatherholt's parents, Otis and Bette Weatherholt, live on a tract of real estate beside the petitioners. Daniel Weatherholt's brother, Respondent Jeffrey Weatherholt, lives on real estate located on the other side of Otis and Bette Weatherholt.

The parties stipulated that a 20-foot wide right-of-way exists from Frosty Hollow Road, across the petitioners' property, across the property of Otis and Bette Weatherholt, to the respondent's property. The parties also stipulated that a 12-foot wide utility easement was deeded to the respondent and exists on the east side of the 20-foot

1

wide right-of-way.[1] The parties generally have agreed that the 20-foot wide right-of-way is ten feet from either side of the centerline of the existing paved roadway that runs from Frosty Hollow road to the respondent's property.[2] The paved roadway is about 12 feet wide which means that approximately four feet on either side of the paved roadway is within the 20-foot wide right-of-way.

In July 2013, Respondent Jeffrey Weatherholt filed a complaint against Petitioners Daniel and Denice Weatherholt in the Circuit Court of Hardy County in which he alleged that

> [t]he [petitioners] have cause [sic] to be constructed certain impediments and obstructions within the right of way and on the paved roadway which provides deeded access to the property of your [respondent], including having nailed wooden boards into the pavement as purported speed barriers; constructing buildings which have doors that open on the access right of way of the [respondent]; leaving childrens' toys within the right of way; constructing a flower garden and rock garden within the right of way; placing wooden barriers and firewood within the right of way; digging holes in the dirt along the edge of the roadway; and parking equipment in the right of way, all intentionally calculated to interfere with the open access granted to your [respondent] for access to his real estate as noted within his Deed.

---

[1] Respondent Jeffrey Weatherholt acquired his property by deed from his grandmother, Ruth Barr, in 1998. The deed expressly grants to the respondent a 20-foot wide right-of-way, running from Frosty Hollow Road to the respondent's property, and a 12-foot utility easement.

[2] The parties do not agree that the right-of-way is ten feet from the center line of the paved roadway at the entrance to the petitioners' property from Frosty Hollow Road and in the area of a rock garden placed by the petitioners near their home. These disagreements, however, are not pertinent to this appeal.

2

> Your [respondent] has approached the [petitioners] on numerous occasions in an effort to have the obstructions and restrictions in and on the roadway and rights of way removed to allow free and open access contemplated within the Deed of the [respondent]. The [petitioners] have refused to remove the barriers placed within the right of way, including refusing to remove the two (2) wooden "speed bumps" which have nails protruding within the paved roadway. . .

The respondent sought a permanent injunction against the placement of impediments in the right-of-way.

In their answer to the complaint, the petitioners included a counterclaim in which they alleged the following: the respondent had caused or permitted to be constructed a water line serving the respondent's residence that crosses the petitioners' property; the location of the water line is not within the utility easement owned by the respondent; the impermissible placement of the water line constitutes a trespass; and as a result of the trespass, the respondents have suffered injury in the loss of value to their property and nuisance.

The circuit court originally granted a temporary injunction against the petitioners regarding impediments in the respondents' right-of-way. Subsequently, after a bench trial, the circuit court entered a January 15, 2014, judgment order. Regarding the 20-foot wide right-of-way, the circuit court found as follows:

> [T]he [petitioners] have constructed, caused, allowed and permitted to be placed and remain, as constant obstructions within the bounds of the twenty feet (20′) wide access right of way, certain obstructions and hazards, including but not limited to boards with nails protruding to serve as "speed bumps" and children's toys and equipment.

3

The [petitioners] further constructed and/or placed two wooden out-buildings along the west side of the access right of way. Although not constructed within the bounds of the twenty feet (20′) wide easement, the doors of the buildings do open into the bounds of the right of way, the doors swing open into the access right of way, and persons utilizing the two buildings must stand within the bounds of the right of way to gain entry and exit into the buildings.

The Court further finds that all of the obstructions and hazards as described . . . above, with the exception of the wooden speed bumps, have been and are "habitual" in occurrence and nature. Although not making the driveway completely impassable, the obstructions are so close to the twelve feet (12′) wide paved roadway so as to have made passage inconvenient and at times unsafe for both [respondent and petitioners] (citations to record omitted).

Accordingly, the circuit court permanently enjoined the petitioners from placing any impediments or obstructions within the entirety of the 20-foot right-of-way.

Regarding the placement of the respondent's water line across the petitioners' property, the circuit court found as follows:

[T]he [respondent] has proven by clear and convincing evidence that he has a prescriptive easement with regard to the water line. [Respondent] testified that the water line was placed in 1998 or 1999. Otis Weatherholt [Petitioner Daniel Weatherholt's and Respondent Jeffrey Weatherholt's father] testified that he assisted and participated in the construction of the water line and [Petitioner] Daniel Weatherholt testified that he knew of the existence of the water line in its current location prior to constructing his home in 2001. The Court finds there was no evidence of permission having been asked or received by the [respondent] from Ruth M. Barr, the owner of the property prior to [petitioners], with regard to the location of the water line. In fact, [respondent] testified that he had the water line installed before he told his grandmother about it and that he never asked her for permission to put the water line in its current location.

4

Finally, the circuit court found that despite the fact that the petitioners had actual notice of the water line from 2001 through the date of the filing of their counterclaim in 2013, they made no objection to the water line's location but rather acquiesced to its location. Accordingly, the court concluded that the respondent has a prescriptive easement appurtenant to his real estate for the location of the water line.

## II.     STANDARD OF REVIEW

The petitioners challenge the circuit court's grant of an injunction in favor of the respondent and the circuit court's finding that the location of the respondent's water line through the petitioners' property constitutes a prescriptive easement. Regarding our standard of reviewing the grant of a permanent injunction, this Court has held:

> Unless an absolute right to injunctive relief is conferred by statute, the power to grant or refuse or to modify, continue, or dissolve a temporary or a permanent injunction, whether preventive or mandatory in character, ordinarily rests in the sound discretion of the trial court, according to the facts and the circumstances of the particular case; and its action in the exercise of its discretion will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion.

Syl. pt. 11, *Stuart v. Realty Corp.*, 141 W. Va. 627, 92 S.E.2d 891 (1956). Further, "[i]n reviewing challenges to findings and rulings made by a circuit court . . . we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syl. pt. 3, in part, *State v. Vance*, 207 W. Va.

640, 535 S.E.2d 484 (2000). With these standards to guide us, we now consider the petitioners' assignments of error.

## III.   DISCUSSION

### *A.  Jury Trial Issue*

In their first assignment of error, the petitioners argue that the circuit court erred in denying their timely request for a jury trial.

The record indicates that in their answer the petitioners requested a jury on both the respondent's request for a permanent injunction and on the petitioner's counterclaim for trespass and nuisance arising from the placement of the respondent's water line. In a pre-trial hearing, the circuit court informed the petitioners that they were not entitled to a jury trial on these issues. However, immediately before the start of the bench trial, the circuit court revisited the jury trial issue and indicated that the petitioners were entitled to a jury trial on their counterclaim. The court further indicated that the petitioners could have a jury trial on their counterclaim separately from the trial on the respondent's request for a permanent injunction or they could proceed to have both matters decided that day in a bench trial. Counsel for the petitioners indicated that "we're prepared to submit all claims to the Court in a trial before the Court today. . . . This case, far more than most litigation, has been very emotionally taxing on the family and it needs to be resolved." Accordingly, both matters, the permanent injunction and the counterclaim, were heard and decided in a bench trial.

6

In the petitioners' first argument on the jury trial issue, they aver that the circuit court erred in denying them a jury trial on the permanent injunction issue. The petitioners are incorrect. Generally, there is no right to a jury trial in a proceeding in which a permanent injunction is sought. This is because at common law, a proceeding in which a permanent injunction was sought was heard in a court of equity, and there is no right to a jury trial in a matter traditionally heard at equity. It has long been the law of this State that "[a] court of equity has jurisdiction, by injunction, to prevent a continuing material interference with an easement." Syl. pt. 4, *Johnson v. Gould*, 60 W. Va. 84, 53 S.E. 798 (1906). Further, "[s]ince equitable issues are generally determined by a court without a jury, one is not entitled, as a matter of right under the law, to a jury trial of such issues. . . ." Syl. pt. 1, in part, *Human Rights Comm'n v. Tenpin Lounge*, 158 W. Va. 349, 211 S.E.2d 349 (1974). In addition, this Court has indicated that "[w]here already, at the time of the adoption of the Constitution, equity exercised jurisdiction in a certain matter, the provision of the Constitution guarantying trial by jury does not relate to or give right to trial by jury in suits in equity involving such matter." Syl. pt. 7, *Davis v. Settle*, 43 W. Va. 17, 26 S.E. 557 (1896); *see also Bishop Coal Co. v. Salyers*, 181 W. Va. 71, 77, 380 S.E.2d 238, 244 (1989) ("Suits in equity were tried without juries."); *Marthens v. B & O Railroad Co.*, 170 W. Va. 33, 38 n. 2, 289 S.E.2d 706, 712 n. 2 (1982) ("[T]hose issues heretofore decided in equity should today be tried to the judge alone."). Finally, as noted above, "the power to grant or refuse . . . a permanent injunction . . . ordinarily rests in the sound discretion of the trial court [not a jury], according to the facts and the circumstances of the particular case. . . ." Syl. pt. 11, *Stuart*, 141 W. Va. 627, 92 S.E.2d

7

891. Therefore, we conclude that the circuit court did not err in denying the petitioners a jury trial on the respondent's suit for a permanent injunction.

Regarding the petitioners' request for a jury trial on their counterclaim for trespass and nuisance, the petitioners concede that they waived their right to a jury trial but they assert that the waiver is invalid because it was made under duress. This Court finds no merit to this assertion because the petitioners have presented no evidence whatsoever of duress that would invalidate a waiver of the right to a jury trial.[3] Therefore, we reject the petitioners' argument that they were wrongfully denied a trial on their counterclaim for trespass and nuisance.

## B. Propriety of Granting Permanent Injunction

The second assignment of error raised by the petitioners is that the circuit court erred in granting a permanent injunction to the respondent that enjoins the petitioners from placing any obstructions within the respondent's 20-foot wide right-of-

---

[3] The petitioners also assert as part of this assignment of error that the complaint and counterclaim were so closely joined that it was compulsory that they be tried together. In addition, they complain that Respondent Jeffrey Weatherholt is a law clerk to another judge in the same circuit as the judge who presided in the instant case. We decline to address these arguments because they constitute nothing more than unsupported assertions. "Typically, this Court will not address issues that have not been properly briefed." *State v. White*, 228 W. Va. 530, 541 n. 9, 722 S.E.2d 566, 577 n. 9 (2011). Indeed, we have reiterated that "casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal." *State v. Lilly*, 194 W. Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995) (internal quotations and citation omitted). Finally, we have indicated that "a skeletal argument, really nothing more than an assertion, does not preserve a claim." *State Dep't. v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) (internal quotations and citations omitted).

way. Specifically, the petitioners challenge the circuit court's finding that the location of children's toys and the open doors of outbuildings into the easement were "habitual." The petitioners further dispute the circuit court's finding that the toys located in the unpaved portion of the right-of-way were inconvenient and unsafe. According to the petitioners, the toys and outbuilding doors did not constitute obstructions because they were not within the 12-foot paved portion of the easement in which the respondent traveled.

We find no merit to this assignment of error. It is undisputed that the 20-foot right-of-way expressly was conveyed to the respondent by deed. In addition, the parties generally agreed that the 20-foot right-of-way is located ten feet from either side of the centerline of the paved portion of the right-of-way.[4] The respondent presented testimony that the petitioners erected outbuildings at the edge of the unpaved portion of the right-of-way, and that when the outbuilding doors are open they obstruct a portion of the unpaved portion of the right-of-way. The respondent also testified that specific toys were placed in the unpaved portion of the right-of-way and that these toys remained in the right-of-way for a period of months. Finally, the respondent presented several photographs in support of his testimony. In light of this evidence, we find no error in the circuit court's finding that the outbuilding doors and toys constituted a continuing material interference with the respondent's use of the right-of-way. Although these obstructions were not placed within the paved portion of the right-of-way, the petitioner expressly was granted a right-of-way 20 feet in width, and he has the right to the

---

[4] *See supra* n. 2.

9

convenient use of the entire width of the right-of-way. Accordingly, we conclude that the circuit court did not abuse its discretion in granting the respondent a permanent injunction enjoining the petitioners from placing any obstructions within the respondent's right-of-way.

As part of this assignment of error, the petitioners also challenge the denial of their request that permanent speed bumps be placed on the respondent's right-of-way. The circuit court found in regard to this issue:

> The primary complaint of [petitioners] and Otis and Bette Weatherholt were for the potential safety of the [Petitioners'] children, ages 15, 11, and 7, while playing in and alongside the roadway. However, no evidence was offered at trial that demonstrated that any of [petitioners'] children were ever in danger by anyone traveling on the right of way, and the concerns expressed were general in nature. . . . No accidents or injuries have resulted from this use of the right of way.

The petitioners fail to cite to any evidence in the record that contradicts the circuit court's findings on this issue. Therefore, we find no error in the circuit court's findings.[5]

### C. Respondent's Water Line As A Prescriptive Easement

___

[5] In addition, the petitioners set forth the following contentions in support of this assignment of error: the respondent should have pled his action as a nuisance action; the circuit court erred in failing to balance the rights of both parties; the circuit court erred in failing to require the respondent to post a bond prior to the court's granting of a temporary injunction; and the respondent failed to show that the petitioners' actions resulted in irreparable harm to the respondent. Again, these contentions amount to nothing more than unsupported assertions that this Court declines to address. *See supra* n. 3.

In their final assignment of error, the petitioners challenge the circuit court's finding that the respondent's placement of his waterline across the petitioners' property constitutes a prescriptive easement.

At the time of the placement of the respondent's waterline, the petitioners' property belonged to Ruth Barr, the grandmother of Daniel and Jeffrey Weatherholt. The respondent testified below that the water line was not placed in the 12-foot utility because rocks within the utility easement made it too difficult to dig the necessary trench there. As a result, the respondent had to locate the water line elsewhere through Ms. Barr's property. The respondent testified further on direct examination as follows:

Q. Did anyone object at that time?

A. No.

Q. Did your grandmother object at that time?

A. No.

Q. Was she aware of where [the water line] was put?

A. I asked her – I didn't ask her. I mean, I said, "Grandma, we had to run the water line down through the woods." And – or she said – I said, "We needed to run it down through the woods."
    And she said, "Well, why did you need to do that?" I said, "Well --" I said, "It was hard to dig it there," as I recall, and she said okay. I mean, she was very easygoing. I mean, you know, Grandma didn't – it didn't matter to grandma.

Q. So there was no objection?

A. No.

11

Q. You did not go to her before you did it and asked permission?

A. No, sir. I don't recall doing that.

Evidence adduced at trial indicates that the petitioners subsequently acquired the property from Ms. Barr. The petitioners learned of the waterline's location in 2001 when they began construction of their home, and they did not challenge the placement of the waterline until 2013 when they filed their counterclaim to the respondent's suit for an injunction.

The circuit court found, in pertinent part, as follows on the issue of the prescriptive easement:

> From the testimony and evidence at trial, the Court finds that the [respondent's] water line was constructed in 1998 or 1999 with the knowledge and assistance of Otis Weatherholt, through what was then property owned by Ruth M. Barr, to the home of [respondent]. Based upon the uncontroverted testimony of the [respondent], the Court finds that he did not obtain the permission of the grandmother, Ruth M. Barr, prior to constructing the water line outside his confines of his twelve feet (12′) wide utility easement, that he built the water line in its current location with the knowledge and even assistance of his father, Otis Weatherholt, and that a friend of his father's [sic] installed the line in its current location after having trouble digging the line within the twelve feet (12′) wide utility easement.
>
> After installing the water line outside the confines of the utility easement, [respondent] informed the owner, Ruth M. Barr, of the location of the water line and she did not object or take any subsequent action so long as she owned the

12

property to have [respondent] remove or relocate the water line.

Ruth M. Barr subsequently sold her real estate, through which the [respondent's] water line was constructed, to [petitioners] by deed dated March 30, 2001. [Petitioner] Daniel Weatherholt's testimony confirmed that he was aware of the location of the water line, as it crossed through and under his real estate, during the construction of his home in 2001. The Court finds that Otis Weatherholt and the [Petitioner] Daniel Weatherholt had knowledge of the exact location of the water line as it crossed the real estate then owned by Ruth M. Barr.

. . . .

The [petitioners] had actual knowledge of the existence and exact location of the [respondent's] water line prior to constructing their home in 2001, a period of more than ten years, prior to objecting to it by the filing of their counterclaim in this action on August 8, 2013. . . . [Petitioner] Daniel Weatherholt . . . testified that although he was aware of the existence and location of the water line and access road easements, he was unaware of the deeded location of the twelve feet (12′) wide utility easement. . . .

The Court finds that the [petitioners] took no adverse action and made no objection as to the location of the water line from the fall of 2001 until the filing of the Counter Claim in this action by Certificate dated August 5, 2013, a period of more than ten years. The Court further finds that the [petitioners] acquiesced to the location of the water line for a period exceeding ten years.

The petitioners argue that the circuit court erred in finding that the location of the respondent's water line through the petitioners' property constitutes a prescriptive easement. The crux of the petitioners' argument is that the respondent's placement of the water line outside of his utility easement was not an adverse use of Ruth Barr's property

13

because Ms. Barr granted implied permission to the location of the water line after she was informed of its location by the respondent.

This issue is governed by this Court's definitive opinion on prescriptive easements, *O'Dell v. Stegall*, 226 W. Va. 590, 703 S.E.2d 561 (2010). In syllabus point 1 of *O'Dell*, this Court held:

> A person claiming a prescriptive easement must prove each of the following elements: (1) the adverse use of another's land; (2) that the adverse use was continuous and uninterrupted for at least ten years; (3) that the adverse use was actually known to the owner of the land, or so open, notorious and visible that a reasonable owner of the land would have noticed the use; and (4) the reasonably identified starting point, ending point, line, and width of the land that was adversely used, and the manner or purpose for which the land was adversely used.

At issue in the instant case is the first element: the adverse use of another's land. Regarding this element, this Court explained in *O'Dell* that

> [i]n the context of prescriptive easements, an "adverse use" of land is a wrongful use, made without the express or implied permission of the owner of the land. An "adverse use" is one that creates a cause of action by the owner against the person claiming the prescriptive easement; no prescriptive easement may be created unless the person claiming the easement proves that the owner could have prevented the wrongful use by resorting to the law.

Syl. pt. 5, *Id.*

When we apply our law in *O'Dell* to the instant facts, we find no error in the circuit court's determination that the respondent's placement of his water line outside

14

of the utility easement constituted an adverse use of the petitioners' property. Contrary to the petitioners' contention, the evidence clearly indicates that the respondent did not ask permission of Ms. Barr, the owner of the property, to place the water line outside of the utility easement. Instead, the respondent placed the water line outside of the utility easement and thereafter informed Ms. Barr of the location of the water line. As we held in syllabus point 5 of *O'Dell*, "[a]n 'adverse use' is one that creates a cause of action by the owner against the person claiming the prescriptive easement." In the instant case, the respondent's placement of the water line through Ms. Barr's property outside of the utility easement without first seeking Ms. Barr's permission created a cause of action by Ms. Barr against the respondent for trespass. Therefore, the respondent's placement of the water line outside of the utility easement without first seeking Ms. Barr's permission meets the definition of "adverse use" set forth by this Court in *O'Dell.*

The petitioners' argument that implied permission means the same as acquiescence must fail when applied to the facts of this case. It is significant that there is no evidence that Ms. Barr had knowledge of the water line until after it was installed outside of the utility easement. If Ms. Barr knowingly had acquiesced to the placement of the water line outside of the utility easement prior to its placement, her acquiescence could be construed as implied permission. Instead, she acquiesced to the placement of the water line *after* learning that the water line already had been placed outside of the utility easement. The fact that Ms. Barr acquiesced to the placement of the water line after it was installed is actually proof of one of the elements of a prescriptive easement.

15

Specifically, element three requires a person claiming a prescriptive easement to prove that "*the adverse use was actually known to the owner of the land, or so open, notorious and visible that a reasonable owner of the land would have noticed the use.*" Syl. pt. 1, in part, *id* (emphasis added). In other words, a person claiming a prescriptive easement must prove that the owner of the land had knowledge of the adverse use and acquiesced to the adverse use for the requisite number of years. In the present case, the evidence shows that Ms. Barr had actual knowledge of the location of the water line outside of the utility easement, and she acquiesced to the location. Therefore, we find that the circuit court did not err in ruling that the respondent proved by clear and convincing evidence that his placement of the water line outside of the utility easement constituted an adverse use of the petitioners' land.[6]

## IV. CONCLUSION

For the reasons stated above, we find no error in the January 15, 2014, order of the Circuit Court of Hardy County that granted injunctive relief to the respondent prohibiting the petitioners from placing any obstructions in the respondent's easement and concluding that the current location of the respondent's water line is an appurtenant prescriptive easement through the petitioners' property. Accordingly, the January 15, 2014, order of the Circuit Court of Hardy County is affirmed.

Affirmed.

---

[6] Finally, it is undisputed that Petitioner Daniel Weatherholt, after acquiring the property from Ms. Barr, had knowledge of the location of the water line in 2001 and did not contest the location until 2013.

16