# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Michael F. Witteried, Mary T. Witteried,**
**and Joshua Witteried,**
**Defendants Below, Petitioners**

**FILED**

**May 11, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 17-0310** (Jefferson County CC-19-2014-C-305)

**The City of Charles Town, a West Virginia**
**Municipal Corporation,**
**Plaintiff Below, Respondent**

## MEMORANDUM DECISION

Petitioners Michael F. Witteried, Mary T. Witteried, and Joshua Witteried, by counsel Steven Brett Offutt, appeal the Circuit Court of Jefferson County's March 1, 2017, order denying their motion to alter or amend the circuit court's December 13, 2016, final order related to three adjoining parcels of property owned by petitioners. Respondent The City of Charles Town, a West Virginia Municipal Corporation ("the City"), by counsel Braun A. Hamstead and Andrew F. Pahl, filed its response, to which petitioners submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioners are Michael and Mary Witteried, husband and wife, and their adult son, Joshua Witteried. On or about September 12, 2014, The City filed a complaint against petitioners as a "Petition for Injunction to abate nuisance conditions existing on the privately owned real estate of [the City] and to require of [the City] compliance with certain City codes and ordinances pertaining to their real estate." The City also sought to obtain injunctive relief so that it may have its code official inspect unoccupied structures and conditions on petitioners' real estate to determine the status thereof and whether any of those structures should be condemned. According to that complaint, petitioners are private citizens who have ownership in three adjoining parcels of real estate within the City – two located on South George Street and one on Academy Street. The complaint states that only the "Viener House" is occupied at 400 South George Street, while there is a vacant and uninhabitable house at 416 George Street ("Victorian"), and a partially completed structure ("carriage house") on the Academy Street

1

property where construction began around 2004.[1]

In that complaint, the City alleged that petitioners had violated § 1232(v)2a of the City's Amended Zoning Codes (effective September 26, 2012), which prohibits the outside parking of more than six vehicles on the three lots comprising the Witteried real estate. The City asserted that petitioners park more than six vehicles on their real estate and that the "excessive number of vehicles are neither used nor intended for the residential use of the said owners as a means of transportation. Instead, the aforesaid accumulation and storage of 'Collectible [sic] Cars' has been undertaken by [petitioners] for investment purposes so that Michael Witteried will have a 'retirement.'" The City pointed to several written notices between 2005 and 2013, in addition to orders to "gain compliance" with the zoning ordinance.

The City also alleged that the real estate is subject to certain provisions of the International Property Maintenance Code ("IPMC") that the City adopted under Article 1705 of the City's Codified Ordinances. The City contends that the real estate suffers from unlawful conditions, such as parking, keeping, and storing inoperative motor vehicles and unlicensed motor vehicles on the real estate in violation of § 302.8 of the IPMC; the failure to maintain the exterior of the Victorian in good repair, sanitary, and free from deterioration, litter, and debris so as to not pose a threat to public health, safety, or welfare, and as required by §§ 302 and 304 of the IPMC; and, upon information and belief, are subject to an inspection that the City sought to undertake through the supervision of the circuit court, one or more structures on the Witteried real estate are of such condition that they are maintained in violation of the IPMC to such an extent that they should be condemned and demolished as dilapidated and unsafe real estate pursuant to § 110.1 of the IPMC.

The City's complaint also contained allegations related to violations of the building code. Specifically, it contends that petitioners' real estate violated Article 1705 of the International Residential Code ("IRC") because petitioners built and maintained fence accessory structures without a required building permit; storage accessory structures (sometimes called sea containers) without a required permit; and the incomplete erection of the carriage house for which no building permit currently exists. Petitioners had received formal notice of such violations and an order was accordingly entered, but petitioners had not rectified the situation.

The City asserted additional claims regarding the vacant structures ordinance and maintenance of a public nuisance. The City stated that it had reasonably exhausted all other available legal and administrative remedies and that such proceedings had "proven woefully inadequate to protect the City and its citizenry from the aforesaid public nuisance conditions." Therefore, it claimed that it is entitled to a lien against petitioners' real estate for attorney's fees and the costs of nuisance abatement, as provided for in Article 1101 of its codified ordinances, and it may be further entitled to demolition expenses, as provided in § 106.3 of the IPMC. It also contends that it has incurred huge, otherwise unnecessary, administrative expenses, and attorney's fees by reason of petitioners' intentional code violations and persistent nuisance

---

[1] Without citing to the record, petitioners claim that once completed, this structure will house an antique car collection on the first floor and provide a residential apartment on the second floor.

activity on their real estate. The City then requested a preliminary injunction "to include such matters as the removal of the unlawfully stored vehicle on the Witteried real estate and an inspection of the premises by the city code official and any experts he may engage;" a permanent injunction ordering the abatement of all nuisance conditions on petitioners' real estate, including all code violations; that the City be awarded a lien against all of petitioners' real estate in the amount of any costs that shall be incurred by the City in abating the nuisance conditions and bringing the real estate into compliance with codes; that the City be awarded a lien for its legal fees and expenses reasonably incurred in this cause; and that the City be awarded damages against petitioners.

Petitioners submitted their answer, which included several counterclaims; five of those counterclaims seek declaratory judgment. However, the circuit court granted the City's motion to strike petitioners' counterclaims, including those seeking declaratory judgment.

On November 3, 2014, the circuit court entered a preliminary injunction, requiring the removal of all but six vehicles from petitioners' real estate. The parties later attempted mediation on two occasions with two different mediators, but mediation was not successful. Following a hearing on April 6, 2016, the circuit court entered an order converting the temporary injunction regarding the vehicles to a permanent injunction. That order also granted the City a preliminary injunction as to two sea containers situated on the carriage house lot, requiring their removal from petitioners' real estate, and prohibiting their relocation on any of the City streets. However, in May of 2016, the circuit court granted petitioners a temporary stay of the injunction related to the sea containers in the hope that a third mediation would be successful. The City agreed to the temporary stay, noting that if petitioners would obtain a permit to complete the carriage house within 180 days, the sea containers (which reportedly contained building supplies to complete the house) could constitute lawful appurtenant temporary storage structures during the period of construction. Following a third mediation, it appeared that the parties had reached an agreement as to certain disputes. At a hearing in October of 2016, the parties appeared and reported that Michael Witteried had finally obtained a permit for the enclosure of the two sea containers. He indicated at that time that he would proceed toward completion of their enclosure. He represented to the court that he would have the carriage house cleared out for inspection but had not yet done so. However, additional issues occurred, and, according to the circuit court, at a November 21, 2016, hearing, Mr. Witteried insisted that the matter be promptly brought to a conclusion, complaining of the continued proceedings and requesting dismissal of the case. The City then requested that it be allowed to complete the presentation of its rebuttal evidence.

The circuit court entered its December 13, 2016, final order granting permanent injunction setting forth findings of fact and conclusions of law. With regard to the Victorian and property on which it is situated, the circuit court determined and ordered as follows: the condition of the home constitutes a public nuisance and petitioners are permanently enjoined from using the home and surrounding property for storage of any kind and that personal property remaining in the structure within forty-five days of the date of the order was to be deemed abandoned and could be disposed of by the City; petitioners are enjoined from demolishing or otherwise altering the structure; the City and its agents or designees shall be permitted the right of entry onto the real estate to abate the nuisance conditions present, including the right to cause the structure to be renovated and brought within compliance with the City's ordinances; if the

City finds that demolition of that property would be more appropriate, it has the option to proceed to conduct demolition itself; and the City shall have a lien upon the real estate for the actual cost of the renovations or the cost that the City might have incurred by getting a building loan and doing the renovations itself, or, alternatively, for the cost of demolition.

With regard to the carriage house, the circuit court found and ordered the following: the condition of the property constitutes a public nuisance; petitioners are enjoined from demolishing, improving, or otherwise working on that structure; the City and its agents or designees shall be permitted the right of entry onto the real estate to abate the nuisance conditions present, including the right to cause the structure to be renovated and/or completed and brought within compliance with the City's ordinances; if the City determines that demolition of the structure would be more appropriate, the City has the option to proceed to conduct the demolition itself; and the City shall have a lien against the real estate for the actual cost of the renovations or the cost that the City might have incurred by getting a building loan and doing the renovations itself, or, alternatively, for the cost of demolition. Additionally, it found that the sea containers were a public nuisance and ordered they be removed from the Witteried real estate "and may not be placed on any street within the City of Charles Town." If not removed within forty-five days of the date of the order, the City would be granted the right of entry to abate that nuisance and place a lien upon the real estate for any costs incurred.

Thereafter, the circuit court reinstated the permanent injunction related to the collectable vehicles and amended the same to the extent that petitioners are now prohibited and enjoined from parking their vehicles, in excess of six licensed and operable vehicles, anywhere on the Witteried real estate and from storing or parking the same on any street in the City of Charles Town. Petitioners had ten days from the date of the order to remove all vehicles, in excess of the six permissible vehicles, from their real estate. If they were not removed in that time, the Sheriff of Jefferson County "shall enter onto the real estate and remove same and store them at a facility regularly used for such purpose and shall have a lien against said vehicles for the costs of removal and storage of the same." The order was prepared by the City's counsel, and the circuit court entered the same on December 13, 2016.[2]

On December 28, 2016, petitioners filed a motion to alter or amend that December 13, 2016, order, pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure. According to the circuit court, each of the four grounds petitioners set forth in that motion focused on a singular theme – the circuit court "is simply mistaken about the past history of this matter and mistaken that the implied assumption that the past is the best predictor of the future." By order entered March 1, 2017, the circuit court denied that motion. As part of that order, the circuit court found that Michael Witteried's self-serving post-trial affidavit should not be considered as

---

[2] Petitioners do not address this issue, but the City states that petitioners moved for a stay of the Final Order on March 6, 2017. Both sides submitted proposed stay orders, and the circuit court adopted the stay order submitted by petitioners, though the City contends that order substantially exceeded the scope of the stay requested in petitioners' motion. Pursuant to that stay, petitioners have returned collectable military vehicles and other collectable cars to their lots. The City filed a motion to amend the stay order, but no hearing had been scheduled on that motion.

proper grounds for amending its prior order. With regard to petitioners' argument that the circuit court did not address its petition for writ of certiorari, the circuit court set forth information from several orders entered over the life of the case, and stated that

> [i]t can hardly be more clear that Witteried's [sic] Petition for Writ of Certiorari was several times resolved by the [c]ourt, corresponding with his repeated insistence that the [c]ourt must consider it. It appears to the [c]ourt that no matter how many times the [c]ourt might address the long since resolved collectable car issue, Mr. Witteried will deem it unresolved because the now nine-year-old resolution does not suit him.

It also found that contrary to petitioners' assertions, petitioners did not demonstrate a sincere, good faith intent to comply with the series of orders entered by the circuit court in the underlying proceedings, nor did they demonstrate a sincere intent to comply with applicable City ordinances. The circuit court also pointed out that only Michael Witteried appeared with his counsel at the final hearing and that no petitioner took the stand to testify, nor did they offer surrebuttal evidence. Finally, the circuit court concluded that it appropriately characterized the matter as a twenty-year-old case because "the origins of the Witterieds' battles with the City span 20 years . . . ." It further stated that petitioners' post-trial affidavits and photographs "illicitly submitted with their [m]otion are not consistent with the very principles of due process that they claim to champion." Petitioners appeal from that order.[3]

"The standard of review applicable to an appeal from a motion to alter or amend a judgment made pursuant to W.Va.R.Civ.P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syl. Pt. 1, *Wickland v. American Travellers Life Ins. Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998).

> "'Unless an absolute right to injunctive relief is conferred by statute, the power to grant or refuse or to modify, continue, or dissolve a temporary [preliminary] or a permanent injunction, whether preventive or mandatory in character, ordinarily rests in the sound discretion of the trial court, according to the facts and the circumstances of the particular case; and its action in the exercise of its discretion will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion.' Syl. pt. 11, *Stuart v. Lake Washington Realty,* 141 W.Va. 627, 92 S.E.2d 891 (1956)." Syl. Pt. 1, *G Corp, Inc. v. MackJo, Inc.,* 195 W.Va. 752, 466 S.E.2d 820 (1995).

---

[3] Matters related to the current appeal have been before this Court on three occasions. In Appeal No. 080232, *Michael Witteried v. Board of Zoning of the City of Charles Town*, this Court refused the petition for appeal. In Appeal No. 14-0066, *Michael Witteried v. City Council, The City of Charles Town*, this Court dismissed the appeal. Finally, in Appeal No. 14-0520, *Witteried v. City of Charles Town's IRC-BA*, this Court entered its memorandum decision affirming the Circuit Court of Jefferson County's order dismissing petitioners' writ of certiorari and affirming the decision of the International Residential Code Board of Appeals of the City of Charles Town finding that petitioners' building permit had expired.

Syl. Pt. 1, *Baisden v. West Virginia Secondary Schools Activities Commission,* 211 W. Va. 725, 568 S.E.2d 32 (2002). Further, "[i]n reviewing challenges to findings and rulings made by a circuit court . . . we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syl. Pt. 3, in part, *State v. Vance,* 207 W.Va. 640, 535 S.E.2d 484 (2000). We review the circuit court's decision to grant the injunction accordingly.

On appeal, petitioners assert six assignments of error: 1) The circuit court erred in denying petitioners' demand for a jury trial; 2) the circuit court failed to perform its judicial function when it adopted the City's proposed final order verbatim, denying petitioners their due process; 3) the circuit court erred by failing to rule on petitioners' petition for writ of certiorari; 4) the circuit court erred in finding the sea containers were a nuisance and violated petitioners' constitutional rights by ordering them removed from the property; 5) the circuit court erred in finding the structures on petitioners' properties are not dwellings for purposes of vehicle parking under the municipal ordinances; and 6) the circuit court erred by denying petitioners their due process rights when it applied the administrative remedy available in administrative proceedings before the vacant structures board.

With regard to a jury trial, petitioners argue that because the matter in controversy exceeded the sum of twenty dollars, they are entitled to a trial by jury, as requested in their answer below. While petitioners admit that this Court has stated that "[g]enerally, there is no right to a jury trial in a proceeding in which a permanent injunction is sought," *Weatherholt v. Weatherholt*, 234 W. Va. 722, 727, 769 S.E.2d 872, 877 (2015), they contend that the use of the word "generally" indicates that the rule is not absolute. They argue that before the circuit court could order injunctive relief as to alleged nuisance conditions on petitioners' property, a jury had to find that a nuisance exists. Petitioners' argument is undercut by this Court's discussion in *Weatherholt*, wherein we explained why there is generally no right to a jury trial in an action seeking a permanent injunction:

> This is because at common law, a proceeding in which a permanent injunction was sought was heard in a court of equity, and there is no right to a jury trial in a matter traditionally heard at equity. . . Further, "[s]ince equitable issues are generally determined by a court without a jury, one is not entitled, as a matter of right under the law, to a jury trial of such issues . . . . " Syl. pt. 1, in part, *Human Rights Comm'n v. Tenpin Lounge,* 158 W.Va. 349, 211 S.E.2d 349 (1975). In addition, this Court has indicated that "[w]here already, at the time of the adoption of the Constitution, equity exercised jurisdiction in a certain matter, the provision of the Constitution guarantying trial by jury does not relate to or give right to trial by jury in suits in equity involving such matter." Syl. pt. 7, *Davis v. Settle,* 43 W.Va. 17, 26 S.E. 557 (1896); *see also Bishop Coal Co. v. Salyers,* 181 W.Va. 71, 77, 380 S.E.2d 238, 244 (1989) ("Suits in equity were tried without juries."); *Marthens v. B & O Railroad Co.,* 170 W.Va. 33, 38 n. 2, 289 S.E.2d 706, 712 n. 2 (1982) ("[T]hose issues heretofore decided in equity should today be tried to the judge alone."). Finally, as noted above, "the power to grant or refuse . . . a permanent injunction . . . ordinarily rests in the sound discretion of

6

the trial court [not a jury], according to the facts and the circumstances of the particular case. . . ." Syl. pt. 11, *Stuart,* 141 W.Va. 627, 92 S.E.2d 891. Therefore, we conclude that the circuit court did not err in denying the petitioners a jury trial on the respondent's suit for a permanent injunction.

*Weatherholt* at 727, 769 S.E.2d at 877. Just as we found in *Weatherholt* and for the reasons set forth therein, we find that the circuit court did not err in denying petitioners a jury trial in the underlying permanent injunction action.

Petitioners next contend that the circuit court failed to perform its judicial function when it adopted the City's proposed orders. While petitioners admit that the submission and adoption of proposed orders by circuit courts is common in West Virginia, they assert that time periods identified in the final order were not addressed during the relevant hearing and that there is no indication that the final order is a result of the circuit court's independent judgment. As part of that argument, petitioners address several alleged errors in the final order, all of which amount to arguments concerning the merits of the underlying dispute. When addressing a similar issue in *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 214, 470 S.E.2d 162, 168 (1996), we specifically stated that "[a]s an appellate court, we concern ourselves not with who prepared the findings for the circuit court, but with whether the findings adopted by the circuit court accurately reflect the existing law and the trial record."[4] Further, some of the issues petitioners complain of in the final order appear to be minor matters that are supported by the record even if they were not specifically set forth by the circuit court during the preceding hearing. Upon our review, the other alleged errors in the order do not support petitioners' contention that they were denied their due process rights by the entry of that order. Therefore, we find that the circuit court did not err in adopting the final order at issue without making changes to the same.

Petitioners' third assignment of error is that the circuit court did not expressly rule on petitioners' petition for writ of certiorari. On December 12, 2013, petitioners filed a petition for a writ of certiorari with the circuit court seeking a review of the City's decision regarding the legal non-conforming use of the Witteried property. That petition was Civil Action No. 13-AA-1, and it was later merged with the instant nuisance action, Civil Action No. 14-C-305. Petitioners argued to the circuit court on several occasions that the court was failing to act on their petition. The circuit court noted in an order that the issue of grandfathering was resolved in a 2006 ruling of the City's Board of Zoning Appeals ("BZA"), which was upheld by the circuit court in July of 2007. Petitioners, however, contend that the issue raised and decided in the 2006 BZA decision is not the same issue raised in their petition for writ of certiorari. Petitioners assert that because the circuit court did not specifically address their petition, the issue must be remanded for proper consideration.

In their petition for writ of certiorari, petitioners advance two grounds for relief: 1) the

---

[4] In *Cooper*, we also stated as follows: "Verbatim adoption of proposed findings and conclusions of law prepared by one party is not the preferred practice, *see South Side Lumber Co. v. Stone Constr. Co.,* 151 W. Va. 439, 152 S.E.2d 721 (1967) (findings of fact *should* represent trial judge's own determination), but it does not constitute reversible error." *Cooper* at 214, 470 S.E.2d 168.

collectable car parking was grandfathered and 2) the BZA misinterpreted the ordinance that limited the number of cars that could be parked at each dwelling within the City's borders. In its October 16, 2014, order, the circuit court stated that that

> matter has been dealt with by the [BZA] of the City . . . previously. Judge Thomas Steptoe, Jr., entered an order back in 2007 finding that the collectable cars were not grandfathered in and that Mr. Witteried was not within his rights to have such a large number of vehicles stored on the subject premises.

In a revised order, entered on April 6, 2016, the circuit court found, in relevant part, that the grandfathering claim had been resolved by Judge Steptoe; it went on to state that it was persuaded that Judge Steptoe's order laid to rest the question of the BZA decision and the question of whether petitioners' collectable vehicles were grandfathered by upholding the BZA decision. The circuit court specifically stated that

> [t]his [c]ourt again resolved that question in granting the preliminary injunction requiring [petitioners] to remove all but six vehicles from the combined three lots which are occupied incident to the Witteried residential dwelling. The [c]ourt agrees with the City's argument that, since the vehicles have never constituted a legal use of the real estate, they were not a grandfathered use when the City adopted its most recent 2012 Ordinance.

In its final order, the circuit court noted that Judge Steptoe previously ruled that the cars were not grandfathered in and that Michael Witteried was not within his rights to have such a large number of vehicles stored on the subject premises. It explicitly stated that it did not see the cars as a "new live, unresolved issue. Instead, it is an old, long past resolved issue that is now settled law in this case." While the circuit court may not have directly addressed every issue raised in petitioners' petition for writ of certiorari, it is clear that the circuit court considered that petition and set forth sufficient findings on the same.

Petitioners next argue that the circuit court erred in finding that the sea containers were a nuisance and violated petitioners' constitutional rights by ordering them removed from the property. They assert that at the time of the final hearing and when the final order was entered petitioners possessed a building permit for the sea containers that was less than sixty-days old. Petitioners contend that the circuit court did not have the authority to rescind the building permit and that in effectively doing so the circuit court deprived petitioners of their constitutionally protected property interest in their building permit.[5]

As set forth in West Virginia Code § 8A-9-1(a), "[e]very decision or order of the planning commission, board of subdivision and land development appeals, or board of zoning appeals is subject to review by certiorari." In this matter, in 2013 the BZA found that petitioners should be permitted to apply for a permit. However, the City denied the application to permit the

---

[5] In support of their argument, petitioners point to West Virginia Code § 8-24-59. However, that statute was repealed in 2004, and the correct statute it appears that petitioners were trying to reference is West Virginia Code § 8A-9-1.

enclosure of the sea containers while violations and nuisance conditions existed on the carriage house lot and no permit existed for the completion of the carriage house. Further, the City contends that one cannot have an accessory use on a lot without a primary use. When petitioners promised to move forward with construction of the carriage house, the sea containers were the subject of an injunction requiring their removal. The sea container injunction was stayed upon the appearance of counsel for petitioner with the prospect of voluntary abatement of the nuisance conditions. On October 13, 2016, the City issued a permit to enclose the sea containers. At the hearing the following day, Michael Witteried promised to remove the materials from the carriage house and obtain reinstatement of the carriage house permit. The City asserts that upon completion of the carriage house, the sea containers would be an appropriate accessory use to the carriage house primary use. However, petitioners did not obtain a permit for the completion of the carriage house. In its final order, the circuit court specifically found that "nothing has been done to obtain the [c]arriage [h]ouse permit reinstatement . . . Therefore, the [c]ourt further finds that the [s]ea [c]ontainers are not temporarily maintained for storage of materials incident to an active building permit and they constitute a nuisance."

In its final order, the circuit court indicated that prior to the October 14, 2016, status hearing, Mr. Witteried had represented that the sea containers could be enclosed within a very short time, as soon as one month. However, the photographs presented to the circuit court at the final hearing showed that they had not "been screened nor in any way enclosed." It went on to determine that the City acted reasonably in determining the original building permit had expired but that the City's administrative process had been inadequate in addressing the nuisance condition. Since that time, the City had waived fees and certifications in order to allow petitioners to obtain an additional permit for the sea containers, but petitioners had not done anything to obtain the carriage house permit reinstatement "despite a growing collection of vehicles including old military vehicles." In addition, at the November 21, 2016, hearing, Mr. Witteried insisted that the matter be promptly brought to a conclusion, complaining of the continued proceedings and requesting dismissal of the case. Based on the circuit court's well-reasoned findings and conclusions, we agree with the same and find that it did not err in finding the sea containers to be a public nuisance that had to be remedied.

Petitioners' next assignment of error is that the circuit court erred in finding that the carriage house and the Victorian house are not dwellings for purposes of vehicle parking under the City's ordinances. Petitioners assert that because the Victorian is zoned as a duplex, it could represent two dwelling units, each entitled to six parking spaces. Petitioners assert that the issue hinges on the definition of "dwelling" and that the City erroneously argued that to be a dwelling there must be "facilities that create an occupied residence" and the structure must be habitable. However, petitioners argue that a structure need not be habitable to be considered a dwelling, so they should be permitted to park six vehicles in front of their residence, twelve vehicles on the Victorian property, and six vehicles on the carriage house property.

At the outset, we note that petitioners fail to cite any statute, rule, or precedent in support of their argument. In addition, the parties cite only to transcripts for the definition of the word "dwelling" and fail to point this Court to a copy of the ordinance at issue in the appendix or the supplemental appendix filed with this Court, which total approximately 1,800 pages. Further, the parties fail to state the specific section of the ordinance that contains the disputed definition.

9

However, the parties appear not to dispute that the definition of a "dwelling" under the ordinance includes the phrase "[a] building or portion thereof . . . which includes lawful cooking space and lawful sanitary facilities reserved for the occupants . . . ." Petitioners do not take issue with the circuit court's finding that the Victorian is a "vacant uninhabitable structure" or that utility services are lacking within the structure, as are amenities inherently necessary for an inhabitable structure. Similarly, they do not dispute that the carriage house is "not fit for habitation." Therefore, based on the language of the ordinance and the undisputed conditions of the Victorian and carriage house, we find that the circuit court did not err in concluding that the structures are not dwellings for purposes of vehicle parking under the City's parking ordinances.

Finally, petitioners argue that the circuit court erred by denying them due process because it applied an administrative remedy available only to the vacant structures board. During the final hearing on December 1, 2016, the City Zoning Administrator testified as to changes to the city ordinances the City adopted on September 6, 2016, that would allow the City to take corrective action, through administrative means, to abate a perceived nuisance on property located in the City. Such action may include the City taking control of a property, making repairs and/or improvements or demolition as it sees fit, and attaching a lien to the property for the amount of the City's costs for such action. However, enforcement of that lien would occur in circuit court. Petitioners contend that while the administrator testified that the amendment had been adopted, "subsequent searches at City Hall revealed no evidence that the amendments were adopted. No evidence revealed that public hearings were held, or that first and second readings occurred in furtherance of adopting the proposed amendments." However, petitioners admit that the record in this case does not address whether those amendments were properly adopted "but raise this to the Court's attention as an instance where the circuit court and [p]etitioners may have been misled by the [r]espondent."

In response, the City contends that the circuit court did not deny petitioners due process by applying remedies in the nuisance proceeding that parallel those available under the City's companion vacant structures ordinance and West Virginia Code § 8-12-16(h). It also asserts that the Vacant Structures Board and the circuit court possess concurrent jurisdiction over the matter by statute. *See* W.Va. Code § 8-12-16(h). Further, the City's vacant structures ordinance, Article 1759.05(a), expressly authorizes the City to proceed under Article 1101, public nuisances.

West Virginia Code § 8-12-16(h) specifically provides as follows:

> Every municipality may also institute a civil action in circuit court against the landowner or other responsible party to get an order to take corrective action up to and including demolition of any structure, dwelling or building that is unsafe, unsanitary, dangerous or detrimental to the public safety or welfare; and to recover all reasonable costs and expenses incurred by the municipality with respect to the property and for reasonable attorney fees and court costs incurred in the prosecution of the action[.]

The statute clearly provides that the City has the authority to institute a civil action in order to take corrective action, including the possible demolition of any structure or dwelling that fits within the statute. *Id.* The statute further provides extensive remedies available to the circuit for

the benefit of the City, including demolition of the structure, dwelling, or building. *Id.* Based on the statute, it is apparent that the circuit court had the authority to order "corrective action up to and including demolition" of the Victorian and the carriage house. For these reasons, we find that petitioners were not denied due process as alleged in their final assignment of error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 11, 2018

**CONCURRED IN BY:**

Chief Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

**DISSENTING:**

Justice Robin Jean Davis