**FILED**
**June 11, 2021**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0694 – *State of West Virginia ex rel. Amerisourcebergen Drug Corp., et al. v. The Honorable Alan D. Moats*;

No. 20-0751 – *State of West Virginia ex rel. Johnson & Johnson, et al. v. The Honorable Alan D. Moats and State of West Virginia ex rel. Patrick Morrisey, Attorney General.*

Wooton, Justice, concurring, in part, and dissenting, in part:

I concur in the Court's judgment that the Mass Litigation Panel's decision to hold a bench trial on the respondents' public nuisance claims was not "so plainly in contravention of a clear legal mandate as to merit issuance of the extraordinary remedy of prohibition." However, I do not concur in the Court's analysis, which gives far too much credence to legal arguments whose resolution, at least in the early stages of this litigation, should be left in the capable hands of the Panel. Further, I respectfully dissent from the remainder of the Court's decision, for the reasons that follow.

For more than a decade, West Virginia Trial Court Rule 26 has provided "a process for efficiently managing and resolving mass litigation" by referral of such litigation to a Mass Litigation Panel. The Panel consists of seven highly qualified and experienced active or senior status circuit court judges – men and women willing and able to take on the formidable task of handling these complex cases, with circuit judges taking on the task in addition to handling the myriad other cases on their dockets, including civil and criminal cases, abuse and neglect cases, original jurisdiction matters, appeals from family court and

1

magistrate court, and all of the administrative duties that fall within their remit. In order to enable the Panel to accomplish the duties assigned to its members, Trial Court Rule 26 was developed to equip members with the tools they require to handle complex, multi-party, multi-issue litigation – and the authority to utilize those tools. In particular, Rules 26.05(a) and (f) require the Panel members to "develop and implement case management and trial methodologies to fairly and expeditiously resolve Mass Litigation referred to the Panel by the Chief Justice[,]" and to "take such action as is reasonably necessary and incidental to the powers and responsibilities conferred by this rule or by the specific directive of the Chief Justice[.]" Consistent with this broad grant of authority, this Court has held that the "management of [mass tort] cases cannot be accomplished without granting the trial courts assigned these matters significant flexibility and leeway with regard to their handling of these cases." *In re: Tobacco Litig.*, 218 W. Va. 301, 306, 624 S.E.2d 738, 743 (2005) (citing *State ex rel. Mobil Corp. v. Gaughan*, 211 W. Va. 106, 111, 563 S.E.2d 419, 424 (2002)).

In the instant case, however, the majority has seen fit to wade into the litigation from lofty chambers situated high above the arena in which this complex case, involving dozens of litigants and dozens of attorneys, will actually be tried. The majority has determined that the Panel is required to hold a jury trial on all issues common to the respondents' equitable *and* legal claims before it holds a bench trial on their purely equitable public nuisance claim, which necessarily leads to the conclusion – although the

2

majority opinion is somewhat opaque on this point – that the Panel must reconsider its previous denial of petitioners' motions for leave to file notices of third party fault pursuant to West Virginia Code §§ 55-7-13d(a)(1), (2) (2016). In this latter regard, petitioners state that the non-parties may include prescribing practitioners; individuals involved in criminal drug trafficking; users of illegally or wrongfully obtained prescription drugs; hospitals; pharmacy benefit managers; federal, state and local government entities charged with regulation and/or enforcement of controlled substances; health insurers; wholesale pharmaceutical distributors; and pharmaceutical manufacturers. Thus, the trial mandated by the majority's opinion will feature dozens of defendants attempting to shift the blame to dozens – perhaps hundreds – of other entities and individuals. One can only imagine the verdict form that the jury will be asked to navigate at the conclusion of a trial which can reasonably be expected to last for years.

It has long been established in our law that public nuisance claims are equitable in nature, *Town of Weston v. Ralston*, 48 W. Va. 170, 36 S.E.2d 446 (1900), and thus triable by the court without a jury. *Weatherholt v. Weatherholt*, 234 W. Va. 722, 769 S.E.2d 872, 874 (2015).[1] Petitioners do not really argue with this general proposition;

---

[1] "Where already, at the time of the adoption of the Constitution, equity exercised jurisdiction in a certain matter, the provision of the Constitution guaranteeing trial by jury does not relate to or give right to trial by jury in suits in equity involving such matter." *Weatherholt*, 234 W. Va. at 723, 769 S.E.2d at 874, Syl. Pt. 5 (citing *Davis v. Settle*, 43 W. Va. 17, 26 S.E. 557 (1896)).

rather, they contend that because respondents are seeking a monetary recovery for the costs of preventing and/or abating the nuisance, the damages sought are legal, not equitable. The majority deems this a close question, despite the fact that the weight of authority in this country is to the contrary. *See*, *e.g.*, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 4194272, at *3 (N.D. Ohio Sept. 4, 2019) ("Unlike tort damages that compensate an injured party for past harm, abatement is equitable in nature and provides a prospective remedy that compensates a plaintiff for the costs of rectifying the nuisance."). The majority further overlooks the fact that the appendix record in this case does not support the petitioners' characterization of the damages sought as legal. Although the respondents' description of the damages in their complaint can fairly be characterized as vague – "damages and costs necessary to eliminate the hazard to public health and safety and to abate, or cause to be abated, the public nuisance caused by the opioid epidemic" – West Virginia is a notice pleading state and it is early days in the underlying litigation. As the majority acknowledges in its opinion at note 56, this Court's Rules of Civil Procedure give a defending party a "liberal opportunity for discovery" to ascertain the particulars of the opposing party's claims both as to liability and damages. *See Sticklen v. Kittle*, 168 W. Va. 147, 163, 287 S.E.2d 148, 157 (1981). In the instant case, given the Presiding Judge's grant of a year for the parties to engage in discovery prior to trial on the public nuisance claims, there would have been ample time for petitioners to pin respondents down on the particulars of damages with interrogatories, requests for production, and depositions: what form(s) will the abatement take? How will the funds be distributed, to whom, and for what? How are you putting a price tag on these costs? Thereafter, the court could have

required respondents to describe the damages they seek, with particularity, in their pre-trial memorandum, all of which would have allowed the court to sort out the equitable wheat from the legal chaff before the trial begins. I am in complete accord with the majority opinion on this point.

All of this is effectively made moot, however, by the majority's holding that the petitioners are entitled to a jury trial on all factual and legal issues that are common to the equitable and legal claims, prior to a bench trial on the equitable claims. I acknowledge that there is precedent to this effect:

> "The usual practice is to try the legal issues to the jury and to try the equitable issues to the court. Where there are some issues common to both the legal and equitable claims, the order of trial must be such that the jury first determines the common issues. The court may, if it chooses, submit all the issues to the jury. There is no constitutional right to a trial without a jury and reversible error cannot be predicated upon the submission of equitable issues of fact to a jury." We adhere to the principles so expressed[.]

*W. Va. Hum. Rts. Comm'n v. Tenpin Lounge, Inc.*, 158 W. Va. 349, 354, 211 S.E.2d 349, 352–53 (1975) (citing 2B Barron and Holtzoff, <u>Federal Practice and Procedure</u> § 873, p. 32 (Rules ed. 1961)). However, in mass litigation cases where this Court's stated objective is to give Panel judges "flexibility and leeway with regard to their handling of these cases[,]" *In re: Tobacco Litig.*, 218 W. Va. at 306, 624 S.E.2d at 743, it is inimical to those

goals for us to step in – particularly here, at the pleading stage[2] of a case which the majority concedes may well be the most complex in this State's history – to mandate procedures that the Panel must follow. At this point, before the first deposition has been taken or the first interrogatory answered, the issues alleged to be common to both the equitable and legal causes of action are described by the petitioners in words that could most charitably be termed general. The bottom line: it's simply too early to know what the disputed issues of material fact (if any) will be, and it's simply too early for this Court to inject itself into the litigation.

Again, I would defer to the wisdom of the judicial officers entrusted with the front-line responsibility of handling mass litigation to devise procedures and methods for accomplishing the stated goals of the Mass Litigation Panel, and to do so in a manner that preserves petitioners' right to a jury trial on all issues triable to a jury. The majority's decision, which effectively strips the Panel of its authority to "take such action as is reasonably necessary and incidental to the powers and responsibilities conferred by [Trial Court Rule 26.05]," will be seen as an invitation for every disappointed litigant in every mass litigation case to challenge every decision of the Panel on a writ.

Accordingly, I concur, in part, and respectfully dissent, in part.

---

[2] Of note, a major reason these cases are still at the pleading stage is that since their referral to the Mass Litigation Panel – on petitioners' motions -- the petitioners have challenged virtually every ruling made by the Panel. The instant petitions for extraordinary relief are numbers six and seven.